# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARUSO, | Case No. 1:15-cv-00780-AWI-EPG (PC) |
| Plaintiff, | **ORDER RE: PRODUCTION OF DOCUMENTS SUBMITTED FOR IN CAMERA REVIEW** |
| v. | |
| OFFICER G. SOLORIO, et al., | **(ECF NOS. 57, 58, 70)** |
| Defendants. | |

## I.  BACKGROUND

Gina Caruso ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  On February 23, 2018, Plaintiff filed a Request for Appointment of Counsel for Indigent Inmate Unable to Get Discovery Privilege. (ECF No. 57).  Plaintiff's motion explained that "Plaintiff has requested documents to help prove her case and the defendants are claiming privilege at every staff related request.  Using generalizations, non-specific hidding [sic] behind privilege, the Defendants are not acting in good faith."  (ECF No. 57, at p. 1).

Plaintiff attached Defendants' Responses to Plaintiff's Request for Production of Documents, Set One.  Defendants objected to many requests on the basis that "The documents requested are part of a confidential investigation and as such are subject to the official

1

information privilege," and refused to produce such documents. (ECF No. 57, at pgs. 7-9). Plaintiff attached Defendants' Declaration of D. Villegas in support of Defendants' Privilege Log. That declaration stated that "CDCR's ISU officers and employees generated or collected, and preserved, in the normal course of business, all of the documents in the Privilege Log as confidential official information, and have maintained their confidentiality." (ECF No. 57, at p. 16). It also represented that "Disclosure of this type of information could undermine staff's ability to function and control violent episodes or prevent the distribution of contraband," and "[t]here is simply no manner in which this information could be disseminated, particularly in a pro se case, that would preserve the institution's interests as inmates do not have the same incentives to obey orders as do officers of the court." (ECF No. 57, at pgs. 16-17). Another declaration in support of Defendants' privilege log, this one from J. Rowan, similarly represented that every document withheld as privileged had been reviewed, was confidential, and could not be disseminated to Ms. Caruso without serious risk to the institution. (ECF No. 57, at pgs. 22-26). Ms. Caruso attached the privilege logs, which stated that Defendants claimed the privileged material was "confidential information that would jeopardize the safety and security of the institution if disclosed," and was privileged under the "official information privilege." (ECF No. 57, at pgs. 19-20; 27-28).

On February 28, 2018, the Court issued an order construing Plaintiff's Request for Appointment of Counsel and Request to Depose Correctional Officer Bates as also including motions to compel. (ECF No. 61).[1]

Defendants filed an opposition of Plaintiff's Motions to Compel. (ECF No. 63). Among other things, Defendants argued that "To the extent the request seeks documents contained within the personnel files of the officers, these documents are protected by the

---

[1] On April 16, 2018, Plaintiff filed a request for *in camera* review of documents claimed confidential. (ECF No. 70). Plaintiff requests that the Court conduct an *in camera* review of the documents that are the subject of Plaintiff's motions to compel. As this request is duplicative of the requests in Plaintiff's motions to compel, this request will be denied as moot. In this same request, Plaintiff asks the Court to compel Defendants to produce original copies of the incident reports at issue. There appears to be no reason why Defendants should not produce original copies of the incident reports at issue to Plaintiff. Accordingly, to the extent that they are in Defendants' possession, custody, or control, the Court will order Defendants to produce original copies of the incidents reports at issue to Plaintiff.

2

official information privilege." (ECF No. 63, at p. 3). Similarly, Defendants argued that "The documents requested are a part of a confidential investigation and as such are subject to the official information privilege." (ECF No. 63, at p. 4). Defendants also represented that "the elements of the confidential investigation contain sensitive information that would jeopardize the security of the institution if released." (ECF No. 63, at p. 4).

After receiving Plaintiff's motion, the Court ordered production to the Court for *in camera* review of all documents withheld as privileged under the official information privilege. (ECF No. 61). Defendants have provided the Court with those documents.

Following a hearing in this case, on April 4, 2018 (ECF No. 66), Defendants filed supplemental briefing to defend their invocation of the official information privilege. Defendants argued in that supplemental brief that they also sought to protect a confidential inmate informant. (ECF No. 71, at p. 3).

**II.  LEGAL STANDARDS**

In *Kerr v. United States Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976), the Ninth Circuit Court of Appeals examined the government's claim of the official information privilege as a basis to withhold documents sought under the Freedom of Information Act. It explained that the "common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) . . . is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure . . . ." *Id.* at 198 (internal citations omitted).

The Ninth Circuit has since followed *Kerr* in requiring *in camera* review and a balancing of interests in ruling on the government's claim of the official information privilege. *See, e.g., Seminara v. City of Long Beach*, 68 F.3d 481 (9th Cir. 1995) (affirming a magistrate judge order compelling disclosure and stating "Federal common law recognizes a qualified privilege for official information."); *Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976) (quoting *Kerr*, 426 U.S. at 406) ("Also, as required by Kerr, we recognize 'that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege.'"); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir.

1990), *as amended on denial of reh'g* (Feb. 27, 1991), *as amended on denial of reh'g* (May 24, 1991) (internal citations omitted) ("Government personnel files are considered official information. To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery.").

In interpreting the official information privilege in this context, the Court also looks to the U.S. Supreme Court's statements related to the requirement that prisoners exhaust administrative remedies. The Supreme Court has upheld the "proper exhaustion" requirement in part because of the evidentiary value of the documents generated as a result of that process. *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006) ("Finally, proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.").

**III. DOCUMENTS WITHHELD BY DEFENDANTS UNDER THE OFFICIAL INFORMATION PRIVILEGE**

Defendants have withheld every document regarding their investigation into the underlying event, including every statement describing the search from defendants, Plaintiff, and any other witness. Below is a review of the main items withheld:[2]

- Notes of every interview, including from Defendant correctional sergeant G. Ingram (016-017), Defendant Correctional Officer D. Martinez (017), Defendant Correctional Officer C. Lopez (017-018), Defendant Correctional Officer G. Solorio (018-019), Correctional Officer S. Bates (019), and Correctional Captain M. Villegas (020).

---

[2] This list includes the primary category of documents, but does not list every time that type of document that appeared. It also omits documents that Defendants have said were separately provided to Plaintiff.

4

- Notes of interviews from two inmates who witnessed the event. Notably these inmate witnesses were not informants about the alleged contraband—they were witnesses to the search at issue. (020)
- Report regarding the prison's conclusion about whether excessive force was used. (021)
- A confidential supplement to the appeal, which is a conclusion from another prison officer regarding the events at issue. This includes notes of that officer's interview of percipient witnesses. (023-025)
- Notices to interviewees including a list of their rights. (026-029)
- Memorandum regarding an attempt to interview Plaintiff. (030)
- Laboratory tests of urinalysis testing. (031)
- An institutional correctional review, which includes a synopsis of events, as well as conclusions regarding whether staff acted appropriately. (036-037)
- Notes of the interviews listed above. (045-048)
- Handwritten notes, without a clear author. (049)
- Various notices and explanation of procedures throughout. (E.g., 059)
- Crime incident reports completed by correctional officers who performed the search. (074-093)
- References to dozens of photographs taken as part of the investigation. (077-079)
- Medical report of injury. (097)

### IV.  ANALYSIS OF OFFICIAL INFORMATION PRIVILEGE

The Court has conducted an *in camera* review and finds that the witness statements, including interview notes, written notes of interviews, and synopses, are highly relevant to the dispute and do not implicate any legitimate security interest. They are accounts of the search at issue, taken as part of the investigation into Plaintiff's complaint, by percipient witnesses to the event, close in time to the event. These are precisely the sort of statements that the Supreme Court envisioned when it stated that "proper exhaustion often results in the creation of an

administrative record that is helpful to the court" because "witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." Woodford, 548 U.S. at 94-95.

Indeed, the documents include statements from Defendants and the Plaintiff in this case. Surely what the parties said at the time of the event about what happened is exceedingly relevant. This is all the more true in a case with a *pro se* incarcerated witness with limited ability to depose individuals. Having the defendants' own statements will greatly assist the parties and the finders of fact in determining what happened that day.

So too is all evidence gathered in connection with the investigation, including any photographs and laboratory tests.[3] These are exceedingly relevant and do not expose the prison or anyone else to a security issue.

Defendants' initial submissions defending the privilege are unpersuasive. In withholding every single document associated with the investigation, Defendants provided Plaintiff with a privilege log with a single entry stating "Confidential information that would jeopardize the safety and security of the institution if disclosed. Cal. Code Regs. Tit. 15 §§ 3321(a), 3450(d), Cal Gov't Code § 6254(f).[4] Official Information Privilege." In other words,

---

[3] The photographs were not included in the *in camera* submission, but are merely referred to in the documents. It is possible that these have been provided to Plaintiff. However, given Plaintiff's complaints about receiving very little in discovery, it appears likely that Defendants have withheld the photographs as well.

[4] 15 C.C.R. § 3321(a) states: "The following types of information shall be classified as confidential: (1) Information which, if known to the inmate, would endanger the safety of any person. (2) Information which would jeopardize the security of the institution. (3) Specific medical or psychological information which, if known to the inmate, would be medically or psychologically detrimental to the inmate. (4) Information provided and classified confidential by another governmental agency. (5) A Security Threat Group debrief report, reviewed and approved by the debriefing subject, for placement in the confidential section of the central file." Cal. Code Regs., tit. 15, § 3321(a). 15 C.C.R. 3450(d) states: "No inmate or parolee shall prepare, handle, or destroy any portion of a departmental record containing confidential information as that term is defined in Section 3321." 15 C.C.R. 3450(d). Cal Gov't Code § 6254(f) states: "Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, the Office of Emergency Services and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes. However, state and local law enforcement agencies shall disclose the names and addresses of persons involved in, or witnesses other than confidential informants to, the incident, the description of any property involved, the date, time, and location of the incident, all diagrams, statements of the parties involved in the incident, the statements of all witnesses, other than confidential informants, to the victims of an incident, or an authorized representative thereof, an insurance carrier against which a claim has been or might be made, and any person suffering bodily injury or property damage or loss, as the result of the incident caused by arson, burglary,

Defendants claimed that disclosure of any single part of the investigation, including all evidence and witness statements, would jeopardize the safety and security of the institution. Based on the content of the underlying documents, this is not a credible assertion. These are not documents about prison security techniques or procedures. These do not provide an inmate with a way of evading prison security. These are not the sort of documents that Courts have protected as privileged based on safety and security reasons. See, e.g., United States v. Wilson, 791 F.2d 1383 (9th Cir. 1986) (in criminal prosecution for escape, district court properly denied discovery requests for records concerning prison security measures and informant information); Candler v. Santa Rita County Jail Watch Commander, 2014 WL 2120310, *3–4 (N.D.Cal. May 21, 2014) (relying on official information privilege to deny motion to compel further production of jail's policies and procedures regarding classification of inmates that "implicat[ed] some specifics on how inmates are classified"); Walker v. Ryan, 2012 WL 1599984, *3–4 (D.Ariz. 2012) (denying motion to compel further responses to discovery requests seeking information about methods for identifying prison gang members and collecting and analyzing gang intelligence); Ibanez v. Miller, 2009 WL 3481679, *2–3 (E.D.Cal. 2009) (denying discovery request regarding how prison officials respond to prison alarms). Rather, these are statement by percipient witnesses, including the Plaintiff and Defendants, regarding what happened *after* Plaintiff was found with contraband.

The Court pressed Defendants during the hearing for any legal basis for the breadth of the asserted privilege. In response, Defendants pointed to the unpublished case of Haddix v. Burris, 2014 WL 6983287 (2014), supposedly for the proposition that inmate statements generally should be shielded from disclosure. That Court in Haddix found that the inmate statements were protected by the privilege because "inmate witnesses are less likely to

---

fire, explosion, larceny, robbery, carjacking, vandalism, vehicle theft, or a crime as defined by subdivision (b) of Section 13951, unless the disclosure would endanger the safety of a witness or other person involved in the investigation, or unless disclosure would endanger the successful completion of the investigation or a related investigation. However, this subdivision does not require the disclosure of that portion of those investigative files that reflects the analysis or conclusions of the investigating officer." Cal Gov't Code § 6254(f).

7

cooperate if they fear being labelled as snitches or identified persons cooperating with authorities because of the increased likelihood of being targeted for assault." Id. at *6.

While the Court agrees that there is a security interest in protecting unidentified inmate witnesses who could be labelled as "snitches" or "persons cooperating with authorities," this is not an issue here. First of all, Plaintiff herself identified the inmates who were interviewed as witnesses to the events, so Plaintiff is already aware of their identity and herself encouraged investigators to speak with them. (020). Moreover, in this instance, they will not be accused of "snitching" on Plaintiff as they do not accuse Plaintiff of improper conduct. Rather, they provide percipient facts regarding the search.

Defendants also state that the documents should be protected because "there was information from a confidential informant which precipitated the search." (ECF No. 71, p. 3). They thus suggest that disclosure could threaten that confidential informant. However, the documents cited do not provide any further information besides that already disclosed in Defendants brief, i.e., there was a confidential informant who told prison officers about potential contraband. The confidential informant is not named or otherwise identified in the documents. Nor is any more specific information provided by that informant. (016, 046). Furthermore, the inmate witnesses who provided statements are not the confidential informant. Under the circumstances, it is misleading to suggest that these documents were withheld to protect a confidential informant.

Defendants next state that they are attempting to preserve information related to an ongoing criminal enterprise. (ECF No. 71, at p. 3). They state that the prison needs all witness cooperation to counter entry of contraband or narcotics. However, the documents do not concern the way that Plaintiff obtained contraband, or the way that the confidential informant learned of the contraband. They only concern what happened after contraband was detected. This argument too is highly misleading.

Defendants also claim that Plaintiff "was apprised of the investigation (and its results) through the CDCR Form 837 . . . ." (ECF No. 71, at p. 4). Defendants do not attach the documents provided to Plaintiff. Certainly if Plaintiff already has these documents, there is no

issue with their disclosure. But given Defendants' claim of privilege and briefing, it appears that Defendants are withholding the witness statements themselves and other evidence. To the extent Defendants are referring to the conclusions of the prison after the investigation, such an opinion is far from a substitute for actual witness statements and evidence, which could be used to impeach such witnesses at trial.

Finally, Defendants claim that there is little evidentiary value in producing documents regarding how staff members are notified of their rights during the investigation process. Similarly, Defendants object to production of "notes or critiques." While the Court does not see any threat to the safety and security of the prison in disclosure of such documents, it also does not see their relevance. The correspondence with witnesses soliciting their interview, providing their rights, and explaining similar procedures are not relevant to the lawsuit. Nor is there any relevance to the findings of the prison, which are not binding on the Court and likely not admissible. The Court appreciates that the prison should be free to make findings for or against their staff without such findings being used in subsequent litigation. Accordingly, Defendants are permitted to withhold/redact any documents regarding the procedures for the interviews or conclusions of the prison. However, all summaries of witness statements and other evidence must be produced even if contained within a document reaching a conclusion regarding that evidence.

In conclusion, the Court will overrule the official information privilege as to witness statements and evidence as described in this order. The Court is also troubled by the use of the privilege in this instance. Defendants withheld all evidence generated from their investigation by claiming that any disclosure would threaten safety and security. The content of the documents do not bear out Defendants' description. Instead, it appears that Defendants improperly invoked the official information privilege to withhold all pertinent evidence from Plaintiff, contrary to Supreme Court case law endorsing disclosure of such evidence. Moreover, they took these questionable positions in a case with a *pro se* litigant, who lacks the legal training to adequately challenge Defendants' positions. To the extent such positions are

part of a legal strategy, and not just an isolated mistake, the Court encourages defense counsel to reconsider such a strategy going forward.

## V. CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for *in camera* review of documents claimed confidential is granted in part. Within **14 days** from the date of this order, to the extent that they are in Defendants' possession, custody, or control, Defendants shall produce to Plaintiff original copies of the incidents reports at issue.

2. Plaintiff's motions to compel are granted in part. Within **14 days** from the date of this order, Defendants shall produce to Plaintiff the documents withheld under the official information privilege and provided *in camera* to the Court to the extent the withheld documents contain:
   a. Witness statements.
   b. Reports by witnesses, including incident reports.
   c. Summaries of evidence or witness statements.
   d. Evidence, including reports of drug tests, photographs, or any other evidence collected regarding the search at issue.

3. Defendants may redact/withhold:
   a. Confidential identifying information about prison officers, if any, including their first names, addresses, social security number or similar personal information.[5]
   b. Statements of rights given to witnesses, or other purely procedural documents not including any statement about the underlying event; and

\\\
\\\
\\\

---

[5] The Court did not notice any such information, but includes this order in the abundance of caution.

c. Conclusions or analysis of any prison authority regarding the complaint, including whether staff acted appropriately and consistent with prison procedure. However, summaries of any witness statements or evidence included in such analysis documents must be provided.

IT IS SO ORDERED.

Dated: **April 30, 2018**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE