UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARUSO,<br><br>        Plaintiff,<br><br>    v.<br><br>OFFICER G. SOLORIO, et al.,<br><br>        Defendants. | Case No. 1:15-cv-00780-AWI-EPG (PC)<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS<br><br>(ECF Nos. 155 & 160) |

      Gina Caruso ("Plaintiff") is a state prisoner proceeding *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed her first complaint in this action on May 22, 2015. (ECF No. 1). This case now proceeds against Defendants Ingram, Martinez, Lopez and Solario for excessive force in violation of the Eighth Amendment and an unreasonable search in violation of the Fourth Amendment. (ECF Nos. 24 & 53). These claims stem from a July 22, 2013 search of Plaintiff and her cell while Plaintiff was incarcerated at CCWF.

      On July 12, 2019, Plaintiff filed an amended motion for sanctions against Defendants "for failure to comply with this Court's order, filed on May 1, 2018, compelling Defendants to produce original copies of the incident reports at issue in this case." (ECF No. 160, at p. 1).[1]

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

Defendants filed an opposition to the motion for sanctions on July 19, 2019. (ECF No. 166). Plaintiff filed a reply on July 24, 2019. (ECF No. 167). The Court held a hearing on the motion on July 26, 2019. (ECF No. 168). Per the Court's order following the hearing (ECF No. 169), on August 26, 2019, Defendants filed a supplement and a declaration from Defendant Ingram (ECF Nos. 170 & 171).

For the following reasons, the Court grants in part and denies in part Plaintiff's motion for sanctions.

I. **BACKGROUND**

Plaintiff's lawsuit stems from a search done in her cell while Plaintiff was incarcerated at Central California Women's Facility ("CCWF"). Throughout the years of litigation since this case was filed in 2015, Plaintiff has claimed that Defendants have withheld earlier versions of an incident report. As described below, this issue has been addressed multiple times in several motions and hearings regarding this case.

A. **Court First Orders Defendants To Provide All Incident Reports**

The Court first ordered production of all documents regarding the incident in its discovery order following the scheduling conference, on November 30, 2017. (ECF No. 44). That order provided in relevant part:

> Each party has until December 26, 2017, to . . . [p]rovide the opposing party with copies of all documents they have in their possession, custody, or control, related to the Rules Violation Report that was issued regarding the incidents described in the complaint, including investigation reports[.]

(ECF No. 44, at p. 2).

B. **Plaintiff Claims Defendants Withheld Earlier Versions of Incident Reports And Defense Counsel Denies This**

Soon after, on February 9, 2018, Plaintiff raised issues regarding the original incident report, and its potential destruction, in connection with a Motion for Appointment of Counsel. (ECF No. 57). In that motion, Plaintiff alleged her "original copy of incident report issued to me was removed from my property when placed into Ad-Seg/Lock-up unit at CCWF Prison and then transfered [*sic*] to SHU/Lock-down unit at C.I.W. All original copies of incident

report and written afadatives [*sic*] from witnessess [*sic*] were missing from my property. When counselor printed me out a copy of incident report that was now in computer as a [*sic*] amended incident report it was drastically different from original. . . ." (Id. at p. 2).

The Court considered this request, along with others, and ordered that "the Court shall construe the Requests [ECF Nos. 57 & 58] as including motions to compel, and will direct Defendants to respond to the motions to compel. . . ." (ECF No. 61, at p. 1).

Defendants' opposition to the motion (ECF No. 63) did not address the issue of draft incident reports.

The Court held a telephonic discovery and status conference on April 4, 2018.[2] (ECF No. 66; Hrg 4/4/18 at 3:21-3:26 p.m.).[3] The Court raised the issue of earlier drafts of the incident reports, and defense counsel responded, "I am entirely unaware of multiple versions or any confiscation of her legal property or otherwise." (Id. at 3:28 p.m.). Defense counsel later reiterated that he could not find any other report addressing the circumstances in the complaint other than the allegedly amended document already provided to Plaintiff.

> Defense Counsel: . . . regarding the secondary report or one that is supposed to be sent within 24 hours to director's level, I have not found any other report addressing that circumstance.
>
> Court: And you've searched CDCR records then?
>
> Defense Counsel: Yes, I have.
>
> . . .
>
> Court: Were you able to find whatever the first incident report that got sent off?
>
> Defense Counsel: No, Your Honor. I am only aware of this one version.

(Id. at 3:50 to 3:53 p.m.).

Before the close of the hearing, defense counsel reaffirmed an earlier response to Plaintiff regarding the incident report. "We went through this same issue regarding of reports

---

[2] Audio recordings of the proceedings are available upon request and payment.
[3] Telephonic Discovery and Status Conference held on April 4, 2018 from 3:03 to 4:03 p.m.

3

sent to the director within 24 hours and I responded saying that no documents responsive to that request could be found." (Id. at 3:55 p.m.).

After the conference on April 4, 2018, the Court issued an order requiring the parties to meet and confer regarding the alleged earlier version of the incident report. (ECF No. 67, at pgs. 1-2).

After further motions regarding discovery and disclosure of documents, on May 1, 2018, the Court ordered Defendants to "produce to Plaintiff original copies of the incident[] reports at issue" within fourteen days. (ECF No. 75, at p. 10).

### C. Defense Counsel Again Represents To Court All Documents Regarding Investigative Material Has Been Produced

The issue of producing material related to the investigation and incident arose again during a hearing on August 10, 2018. The Court reiterated its previous orders requiring production of the documents, and attempted to confirm that Defendants produced all the required documents.

> Court: Did now through production, meaning that you provided to me and then everything that I ordered you provided to Plaintiff, did you provide any investigation that were done from ISU regarding this incident?
>
> Defense Counsel: Yes.
>
> . . .
>
> Court: I had a discovery order following initial scheduling conference, it already required that Defendants provide all documents they have in their possession, custody, or control related to the 602 that was filed regarding the incident described in the complaint including investigation reports and also similarly all documents they have possession, custody, and control related to rules violation report that was issued regarding the incidents described in the complaint including investigation reports . . . let me confirm, Mr. Lee, you have now done so . . . ?
>
> Defense Counsel: Yes, that is correct

(Hrg 8/10/18 at 10:20-10:23 a.m.).

\\\

**D. Discovery Dispute**

A discovery dispute later arose regarding production of the original incident reports. In their statement of the discovery dispute, parties described their positions as follows on this issue:

**I.   INCIDENT REPORTS**

A. Plaintiff's Contentions

On April 30, 2018, this Court ordered Defendants to produce original copies of the incident reports at issue. (ECF No. 75 at p. 10.) In their initial disclosures, Defendants produced the one and only version of the incident report that was produced to Ms. Caruso (Plaintiff's Exh. 6.) As repeatedly indicated at the top of each page of the Incident Report, the report produced is an amended version of the incident report. (Plaintiff's Exh. 6 at pp.2-10 (box checked for "amended information".) At his recent deposition, Correctional Officer Martinez testified that the notation of "amended information" suggests that an earlier incident report was prepared. By letter dated February 1, 2019, Ms. Caruso requested that Defendants produce for inspection the original incident reports, as well as any draft reports, within two weeks. (Plaintiff's Exh. 7.) To date, Defendants have not yet confirmed whether any original or draft reports were withheld from Ms. Caruso and/or whether they will be produced for inspection.

B. Defendants' Contentions

In response to Plaintiff's contention regarding original incident reports, Defendants have repeatedly demonstrated that no prior versions of the incident reports exist. Defendants do not dispute that the reports have been marked as "amended," but a diligent search still demonstrates that after approximately six years, this is the only version of the reports that has been discovered. (Lee Decl., Ex. A at p. 2.) Defendants are unaware of any manner in which Plaintiff's request can be met.

(ECF No. 111, at pgs. 9-10).

The Court addressed the issue during a motion hearing on February 15, 2019, as follows:

> The Court: . . . So throughout this case there has been a contention by plaintiff -- this is not the first time -- that the incident report that was given to her was not the initial incident report and at least a suggestion that it had been "doctored" in favor of defendants. . . . Defense says they cannot find an earlier version.

> I think that concludes the motion to compel. I suppose what I do is I grant the motion to compel inso, without objection, insofar as to the extent that defendants ever locate an original report, they must produce it. But right now, they are saying that they have searched it and they cannot find it.
>
> . . .
>
> . . . I will, again, grant the motion to compel without objection. Because I don't think Mr. Lee is objecting that it should be produced to the extent it exists, but he has no more to produce.

(ECF No. 123, at pgs. 21-23). Plaintiff then claimed a discrepancy in the language of Defendants concerning the production order (ECF No. 75) and Defendants' Exhibit A where defense counsel switches from stating originals could not be located to original incident reports are unavailable. (ECF No. 123, at p. 23). Defense counsel responded regarding the allegedly missing incident reports and efforts to locate it.

> [Defense Counsel]: To date, I've still never seen a, quote unquote, original in this, in this particular matter as far as the original 837. It's, it's my understanding that through consultation with the ISU chain as well as litigation staff that this is the only document that's ever been in DIRS . . . DIRS being the incident reporting system that was used back in 2013. I, I have no knowledge of any other database or method in which the report would be maintained, or an original report would be maintained. This is all that's been made available to me.
>
> . . .
>
> . . . Just one clarification regarding any reports that would have gone to the DA's office. It's my understanding that it would have only been the amended report. I, I have no information suggesting that a [*sic*] original was available as the amendeds are dated the same day as this incident.

(Id. at pgs. 24 & 26).

The Court confirmed the search efforts of defense counsel.

> The Court: . . . [I]s there anywhere else you could check or did you check everywhere it might possibly exist, Mr. Lee?
>
> . . .
>
> [Defense Counsel]: . . . As far as where any documents would be, I've consulted ISU all the way up through their chain and through the litigation chain

for documents responsive to this investigation and this is all that I've, I've been given, Your Honor.

(Id. at pgs. 28-29). After the hearing, the Court ordered that:

> Plaintiff's motion to compel the original incident report is denied as moot, because the motion has previously been granted (ECF No. 75). However, Plaintiff has leave to serve up to three interrogatories that seek information regarding efforts made to locate the original incident report. Additionally, the parties are to meet and confer regarding whether Mr. Villegas (phonetic) should be deposed. If the parties cannot come to an agreement, Plaintiff may seek leave to depose Mr. Villegas by filing a supplement to the motion to compel.

(ECF No. 116, at p. 2).

### E. **Defense Counsel Reveals During An Informal Discovery Conference That He Has Located a Prior Version of Incident Report**

The Court held an informal dispute conference on April 25, 2019. (ECF No. 148). Plaintiff had requested the conference in part because Defendants had refused to respond to the interrogatories regarding their search for the original incident reports. The Court emphasized the importance of understanding the search for the original incident report in light of defense counsel's repeated denials that it existed, stating:

> The Court: . . . Multiple times over the issue of this case, there has been this question of why there hasn't been an original incident report. . . . And you even said on the record that you did a search and you were unable to find the original incident report.
>
> And so when there was a renewed motion to compel, I said, well, I can't compel it, but at this point it is appropriate to find out what you did to search for the original incident report and why you're so sure that it doesn't exist.
>
> And so in part of denying the motion to compel, I allowed up to three interrogatories that seek information regarding efforts made to locate the original incident report.
>
> As I understand, [Plaintiff's Counsel] served interrogatories. [Plaintiff's Counsel] served the same interrogatories on all the defendants and you haven't responded to any of them. So we still don't know what you did for the original incident report.

(ECF No. 165, at p. 3).

\\\

Defense counsel then asserted for the first time that he had in fact found the original incident report:

> [Defense Counsel]: Just -- just to be clear, through continued interaction with the institution, the original incident report has been served on Ms. Huang. . . .
>
> The Court: Okay. Wait. Wait. Now I need -- this is a totally different situation. So you found it?
>
> [Defense Counsel]: Yes, Your Honor. Approximately was it 45 days ago that is was sent to counsel?
>
> . . .
>
> The Court: . . . The most important thing is we find the evidence and the evidence gets presented. But, you see, of course I have a question because I've made multiple rulings based on you saying it doesn't exist and it did. So what do you have to say for representing multiple times in court that I should not compel it? I can't even tell how many times. I mean, this might have been six to ten times. You told me I've looked everywhere and I haven't found it, and then you did. So did you not search before? Was someone hiding it? Like what -- what am I supposed to do with this?
>
> [Defense Counsel]: I cannot speak to any efforts of allegations of hiding the report, but I have made multiple inquiries upon ISU staff as well as the litigation -- both of the litigation coordinators that were in place beginning with the start of this -- the start of this litigation, Your Honor, because even as we were starting the initial disclosures process, I mean, the plaintiff raised a number of allegations about an original incident report.
>
> . . .
>
> And beginning at the start of this litigation, the only response I've been given is the amended -- is the amended incident report which Ms. Huang has had as soon as she brought in -- was brought into the case.

(Id. at pgs. 7-9).

Consistent with its practice, the Court did not rule on the issue of sanctions at the conference, but granted Plaintiff permission to file a motion for sanctions on the issues addressed at the informal telephonic conference (ECF No. 148).

\\\
\\\

### F. Plaintiff Files The Motion For Sanctions, Which Is Now Before This Court

Plaintiff filed the present motion for sanctions on July 5, 2019, regarding the failure to produce original documents relating to the incident report. (ECF No. 155). She then filed an amended motion for sanctions on July 12, 2019. (ECF No. 160). A declaration in support of the motion presented deposition testimony from Defendant Ingram that an original incident report had been located in July 2018, approximately six months before it was provided to Plaintiff. (ECF No. 162-13, at pgs. 3-4).

Defendants filed an opposition to the motion. (ECF No. 166). The opposition stated that a draft of one incident report, 837A was discovered and subsequently sent to Plaintiff on February 28, 2019, but a draft of another report, 837C, was never discovered. (Id. at pgs. 4-5).

The Court held an extensive hearing on the issue on July 26, 2019. (ECF No. 168; Hrg 7/26/19 at 1:35-1:50 p.m.). In sum, defense counsel represented that all versions of the incident report had now been located and the rest had been most likely purged as a matter of course.

### G. Court Orders Supplemental Briefing On Lack Of Disclosure

Following the motion for sanctions hearing, the Court ordered that:

> … Defendants have until August 28, 2019, to file a supplement listing the date that Plaintiff was provided with the draft incident report in discovery (ECF No. 162-6, pgs. 1-11). If the draft incident report was not produced in compliance with the deadline in the order entered on May 1, 2018, Defendants shall explain why they did not timely produce the report.

(ECF No. 169, at p. 2)

Following the Court's order, Defendants submitted a brief which described the timeline of the searches and disclosure of the incident reports. (ECF No. 170). It described communications between defense counsel and litigation coordinators that had previously failed to uncover earlier versions of the incident report. It then described that "Defense counsel contacted the new Litigation Coordinator again, to see if there were any other responsive documents for drafts or originals of log number CCWF-CEN-13-07-0154. Defense counsel received a draft of the 837A portion of the incident package from the Use of Force Coordinator.

The draft of the 837A was produced to Plaintiff's counsel on February 28, 2019." (ECF No. 170, at p. 3) (citations omitted).

## II. LEGAL STANDARDS

The Federal Rules of Civil Procedure state as follows when a motion is granted, or disclosure or requested discovery is provided after the motion was filed:

> **Rule 37**
> **(a)(5)** *Payment of Expenses; Protective Orders.*
>   **(A)** *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>      **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>      **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
>      **(iii)** other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37.

Additionally, the Federal Rules of Civil Procedure state as follows when a party fails to obey an order to provide discovery:

> **(b) Failure to Comply with a Court Order.**
>   **(2)** *Sanctions Sought in the District Where the Action Is Pending.*
>     **(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>       **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>       **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>       **(iii)** striking pleadings in whole or in part;
>       **(iv)** staying further proceedings until the order is obeyed;
>       **(v)** dismissing the action or proceeding in whole or in part;

> **(vi)** rendering a default judgment against the disobedient party; or
> **(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> . . .
>
> **(C)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37.

Moreover, the Rules provide as follows when electronically stored information is lost:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>   **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>   **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>     **(A)** presume that the lost information was unfavorable to the party;
>     **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>     **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37.

### III.     ANALYSIS

After considerable review and discussion with the parties, the Court finds the following to be true:

- Defendants initially produced only the final incident report in discovery, despite multiple motions to compel.
- Defense counsel repeatedly represented that no other versions of that report existed, and that a thorough search had been completed.

1     • After repeated motions to compel and court orders, and after Plaintiff
2       requested an informal conference on the current motion for sanctions,
3       Defendants provided an earlier version of the incident report.
4     • Plaintiff still maintains that an additional version or versions of the report
5       existed at one time.
6     • Defense counsel has now assured the Court and parties that no earlier
7       versions of the incident report exist at this time.

Although defense counsel's past representations that all responsive documents have been provided turned out to be false, it appears most likely that all remaining drafts of the incident report have now been produced. The Court cannot determine as a factual matter whether there were additional versions of the report previously in existence. Nothing in this order bars Plaintiff from presenting evidence that another version of the report existed at some time. However, the Court cannot find for the purposes of this motion for sanctions that Defendants continue to withhold additional versions of the incident report.

It is also worth noting, in terms of prejudice, that the amended incident report contains a notation explaining changes between this and a prior version of the report, as follows:

> The Current Amendment Record Number is CCWF-CEN-13-07-0154A1 Created on 07/29/2013. The previous record was amended to reflect a change on the of the [sic] incident title on the CDCR 837A from Stimulants and Sedatives- Distribution of a Controlled Substance to Force and Violence - Resisting and/or Obstructing a Peace Officer, Resulting in Use of Force. The original CDCR 837A was also amended to reflect a change of the incident time from 1400 hours to 1230 hours and that there was a use of physical force during the incident. Lastly, the original CDCR 837A was amended to reflect a change in the incident location from Central Services/ISU Office to Facility C, Building 511, Room 3.

(ECF No. 166-1, at p. 15). Defendants claim that this information fully discloses any changes made to the report. Without deciding whether this notation in fact fully and accurately reflects all changes made, it does provide substantial information regarding changes made, reducing prejudice from the failure to provide all versions of the report.

Thus, the Court declines to issue sanctions for any alleged continued concealment of versions of the incident report. Nor does the Court find that Defendants purposefully destroyed discovery in order to conceal information. Although the facts regarding the existence or "purging" of original reports is still far from clear, the Court does not find sufficient evidence of purposeful spoliation to sanction Defendants on that basis.

The issue remains, however, of Defendants' failure to provide an earlier version of the incident report despite multiple orders by the Court. As discussed above, Defendants were ordered by the Court to provide all versions of the incident report by December 26, 2017. This order was reiterated multiple times. Defense counsel repeatedly assured the Court that all versions had been located and there was nothing more to produce. And yet, an earlier version did exist and was not produced to Plaintiff until February 28, 2019.

Furthermore, it is clear that at least Defendant Villegas had the earlier version of the report around July of 2018, approximately six months before Defendants produced the document to Plaintiff. Defendant Villegas testified during his deposition as follows:

> Q. Did you review any documents to prepare for your deposition today?
>
> A. I reviewed my 837 report, and the incident package, and the RVR report.
>
> Q. And when you say the "incident package," can you tell me what all you reviewed as part of the package?
>
> A. I reviewed my report; I reviewed the -- Officer Solorio's, at the time, report; Officer Lopez's report; Officer Martinez's report; and the A and A1 that was generated by Lieutenant M. Villegas.
>
> . . .
>
> Q. Okay. The incident report you reviewed, was that the amended report?
>
> A. Both.
>
> Q. So when you say "both," can you tell me what you referred to?
>
> A. I reviewed the original, and I reviewed the amended.
>
> Q. And the -- both incident reports that you reviewed were signed copies?

13

| | | |
|---|---|---|
| 1 | A. | The original one I got it off of -- of DERS, and that one wasn't signed. |
| 2 | Q. | And the amended one that you reviewed was signed? |
| 3 | A. | Yes. |
| 4 | Q. | And how did you get it off of DERS? |
| 5 | A. | Well, I was the watching commander prior to -- after that incident, and there's an archive of DERS, and I was able to go back and review the original. |
| 6 | Q. | And when did you do that? |
| 7 | A. | It was probably in July last year of 2018. I understood that the litigation coordinator needed it, and I was trying to locate it for her. And I did locate it, but she said she got it from an alternative source, so I just read it on DERS. |
| 8 | . . . | |
| 9 | Q. | And did you provide it -- the original incident report to her back then? |
| 10 | A. | I told her I could print her a copy of it, but she said she already had it and that she didn't need it any longer, so I didn't forward it to her. |

(ECF No. 162-13, at pgs. 3-5).

This testimony reveals that Defendant Villegas had a copy of the earlier incident report around July of 2018, yet failed to provide it in discovery until February of 2019. Moreover, Defendant Villegas was able to retrieve the document by looking on an archive, and the Litigation Coordinator also found the document by July 2018 from yet another source. This information indicates that a reasonable search would have located this document.

The Court finds that this failure to produce discovery, whether due to a failure to conduct a reasonable search originally or due to a miscommunication, substantially contributed to Plaintiff's need to file a motion for sanctions. Although the missing document was produced before a formal motion for sanctions was filed, it was produced after repeated false representations to Plaintiff and the Court, and this contributed to a severe distrust in

Defendants' representations on this issue. Plaintiff and her counsel had been arguing that an earlier version of the report existed for years, and had been completely stonewalled in their attempt to find the missing report. Then, at Defendant Villegas' deposition, Plaintiff's counsel learned for the first time that an original report indeed existed and had been located many months before. It was reasonable for Plaintiff to file the current motion to compel and for sanctions.

Thus, although the Court is declining to award some of the sanctions requested by counsel, it will award the costs and expenses associated with filing and arguing the current motion for sanctions. See Fed. R. Civ. P. 37(b)(2)(C).[4]

## IV. ORDER

For the foregoing reasons, Plaintiff's motion for sanctions (ECF Nos. 155 & 160) is GRANTED in part and DENIED in part.

Defendants are ordered to pay the reasonable expenses, including attorney's fees, Plaintiff incurred in filing and arguing her motion for sanctions, ECF Nos. 155 and 160 and related pleadings. The parties shall meet and confer regarding those expenses. If there is a dispute regarding the amount, the parties shall submit that dispute, along with documentation regarding fees and expenses, to the Court for resolution.

Except as provided above, Plaintiff's motion is DENIED.

IT IS SO ORDERED.

Dated: **November 26, 2019**    /s/ Erin P. Gross
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court notes that while it is awarding Plaintiff her costs and expenses associated with filing and arguing the current motion for sanctions, at this time it is not awarding costs and expenses associated with Plaintiff's previous attempts to secure production of the original incident report.