# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GINA CARUSO,** | **CASE NO. 1:15-CV-780 AWI EPG (PC)** |
| **Plaintiff** | |
| | **ORDER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **OFFICER G. SOLORIO, OFFICER C. LOPEZ, SGT. G. INGRAM, and OFFICER D. MARTINEZ,** | (Doc. Nos. 187) |
| **Defendants** | |

This case arises out of an encounter between incarcerated Plaintiff Gina Caruso ("Caruso") and Defendant prison guards G. Solorio ("Solorio"), C. Lopez ("Lopez"), D. Martinez ("Martinez"), and Sgt. G. Ingram ("Ingram") (collectively "Defendants"). The operative complaint is the Second Amended Complaint ("SAC"). The SAC contains two viable claims under 42 U.S.C. § 1983, an Eighth Amendment claim for excessive force and a Fourth Amendment claim for an unreasonable search. See Doc. Nos. 45, 53. Currently before the Court is Defendants' motion for summary judgment on all claims. For the reasons that follow, Defendants' motion for summary judgment will be granted and denied in part.

## **RULE 56 FRAMEWORK**

Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears

the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899

2

(9th Cir. 2010).  While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must still be rational or reasonable.  See Narayan, 616 F.3d at 899.  Summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015).  Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Fitzgerald v. El Dorado Cnty., 94 F.Supp.3d 1155, 1163 (E.D. Cal. 2015); Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact.  Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.

## FACTUAL BACKGROUND[1]

At all times relevant to the issues raised in this case, Caruso was imprisoned at the Central California Women's Facility ("CCWF").  See DUMF 1.[2]  Defendants Investigative Service Unit

---

[1] "DUMF" refers to Defendants' Undisputed Material Facts, "PUMF" refers to Plaintiff's Undisputed Material Facts, and "PRDUMF" refers to Plaintiff's Response to Defendants' Undisputed Material Facts.  Additionally, the Court notes that Caruso has submitted 176 PUMF's.  Defendants object that many of these facts are irrelevant.  After review, the Court agrees that a number of these facts are irrelevant to the pending motion.  Further, some of the PUMF's cite evidence that was not provided to the Court and thus, are not properly supported.  The Court will not specifically address all 176 PUMF's.  It is enough to say that the Court will not consider any irrelevant or improperly supported PUMF's.

[2] Caruso disputes this DUMF, as well as others, in part by arguing that she was involuntarily transferred from CCWF in retaliation for pursuing this case.  However, there is no retaliation claim in this case.  Therefore, any response to a DUMF that relies on Caruso's involuntary transfer is deemed undisputed, unless otherwise noted.

("ISU") Officers Solorio, Lopez, and Martinez, as well as ISU Sergeant Ingram, were employed at CCWF at all times relevant to this case. See DUMF's 2-5. Lopez and Solorio are females, and Ingram and Martinez are males. See Plaintiff's Exs. 12, 13, 14, 15; PUMF 15.

On July 22, 2013, ISU staff received information that inmates in Cell 3 of Building 511 possessed contraband, likely drugs and cell phones. See DUMF 6; PUMF 36; Lopez Depo. 58:4-19. Defendants, as well as Lt. Villegas (a male) and ISU Officer Bates (a female), went to search Cell 3. See PUMF's 13, 15; Ingram Depo. 45:10-13.

Upon arrival at Cell 3 at about 12:30 p.m., ISU staff issued orders to inmates Caruso and Littlefield to exit the cell. DUMF 7; Solorio Dec. ¶ 3. Inmate Littlefield exited Cell 3 without incident. DUMF 8. As Littlefield exited the cell, Lopez observed Caruso put a bindle[3] in the back of her pants near her rectal area. See DUMF 9; PUMF 39; Lopez Dec. ¶ 3. Caruso had secreted the bindle in between her buttocks and near her anus. PUMF 41. Lopez then entered Cell 3 and immediately handcuffed Caruso behind her back. See PUMF 18; Lopez Dec. ¶ 3. Immediately prior to and upon handcuffing, Caruso told ISU staff that she had a medical accommodation (a "chrono") that required her to be handcuffed in front of her body. PUMF 19. Soon after she was handcuffed behind her back, Caruso began crying out in pain. PUMF 20. Caruso told ISU staff that they were hurting her, that she had medical issues with her spine, and that she had a prior surgery. PUMF 21. Caruso pleaded with ISU staff to confirm her medical chrono, which was posted on her locker door and visible to all ISU staff. PUMF 22. The medical chrono required that Caruso be handcuffed in front of her body and not behind her back. PUMF's 5, 8. The chrono was printed on goldenrod colored paper and posted on the inside of her locker door, and the locker door was open and located immediately next to the cell door. PUMF's 9, 10. The handcuffing chrono was in effect through August 28, 2013. See PUMF 6. ISU staff are required to comply with medical chronos. See PUMF 117. However, Lopez stated that she did not care about a medical chrono, and a male ISU staff member, likely Sgt. Ingram, said he did not care about Caruso's medical issues and falsely claimed that he could not see the chrono. See PUMF's 24, 26, 27; SAC at ECF pp. 4-5. Lopez escorted Caruso into the hallway. DUMF 10.

---

[3] A bindle is commonly known in corrections as a packaging for narcotics. PUMF 40.

Lopez and Ingram declared that, once in the hallway, Caruso acted fidgety and suspicious, but Caruso testified that she was moving around because of the pressure on her back/spine that the handcuffs were causing. See DUMF 11; Caruso Depo. 16:23-17:4. Ingram ordered Solorio and Lopez to take Caruso back into Cell 3 and conduct and unclothed body search in the shower area. See Lopez Dec. ¶ 4; Ingram Dec. ¶ 4. Solorio and Lopez returned Caruso to Cell 3. DUMF 12. Bates stayed in the hallway with Littlefield, who was facing a wall. See Bates Depo. at 37:6-24; Littlefield Dec. ¶ 3.

ISU staff repeatedly jerked and pulled on Caruso's handcuffed arms, which caused excruciating pain in her neck and shoulders. PUMF 29. The jerking and pulling on Caruso's handcuffed arms would cause her knees to buckle from pain, which made it difficult for her to walk. PUMF 30. Caruso repeatedly cried out about the pain caused by being handcuffed behind her back. PUMF 31. ISU staff admitted that Caruso complained that she could not walk due to pain in her neck and back. PUMF 33. It appears that Caruso fell or went to the ground both during the escort back to Cell 3 and while actually in Cell 3 because of the pressure and pain of the handcuffs and movement. See Caruso Depo. 17:21-18:9. Lopez and Solorio ordered Caruso to stand. See DUMF14. Caruso wouldn't get up because she did not want to be jerked around by the handcuffs again. See Caruso Depo. 18:4-9. While Caruso was on the ground, Lopez performed a partial pat down search and felt something in the front of Caruso's shorts. See PUMF 49; Caruso Depo. 36:15-37:15. Caruso said she had a cell phone and offered to retrieve it herself. See PUMF 50. Instead, Lopez reached inside of Caruso's underwear and pulled the phone out from Caruso's pelvic/vaginal area. See PUMF 51.[4] Ingram then ordered Martinez to enter Cell 3 and help Solorio and Lopez lift Caruso. See Caruso Depo. at 18:10-11, 36:14-38:2.

Martinez helped lift Caruso up and then let Solorio and Lopez take over. See id. at 18:13-14. As Solorio and Lopez continued with Caruso, one of them jerked up on the handcuffs. See id. at 18:14-20. This caused Caruso to hit the ground again, and Caruso asked Solorio and Lopez to

---

[4] Defendants contend that Solorio conducted a pat down search of Caruso when Caruso was placed in a wheel chair, and that during this pat down search, the phone was discovered. However, Caruso contends that Lopez discovered the cell phone prior to being placed in the wheelchair. As the non-moving party, Caruso's version of events is credited. See Narayan, 616 F.3d at 899.

quit jerking the handcuffs.  See id. at 18:20-23.  Ingram and Martinez then entered Cell 3.  See id. at 18:24-25.

Solorio, Lopez, Ingram, and Martinez lifted Caruso.  See id. at 18:24-25, 19:9-22.  Ingram instructed that a pat down search would be conducted in Cell 3 and that Caruso would be strip-searched in the program office.  See id. at 19:14-17.  Solorio began to perform a pat down search, with the assistance of Lopez.  See id. at 20:3-6; Lopez Dec. ¶ 7; DUMF 17.  Solorio pulled at the back of Caruso's shorts and underwear and attempted to look at Caruso's buttocks.  See Caruso Depo. 20:6-10.  Caruso was wearing two pairs of shorts.  See id.  Solorio pulled off the first pair of Caruso's shorts.  See id. at 20:11-14; PUMF 57; DUMF 18.  Solorio then looked down the back of Caruso's single pair of shorts and underwear, but was not patting Caruso down.  See Caruso Depo. 20:14-19.  Solorio then indicated that she saw "it," and discovered the bindle of drugs between Caruso's buttocks near her anus.  See id. at 20:19-21; DUMF 20.  Ingram then pulled a table closer to Caruso and instructed the ISU officers to bend Caruso over the table so that Caruso would not fall down to the ground.  See Caruso Depo. 20:24-21:4.

Martinez, Lopez, and Ingram held Caruso down on the table.  See id. at 21:4-9.  Caruso's head was sideways on the table, and because of a neck surgery, this caused Caruso pain.  See id. at 21:10-15.  Defendants said to hold Caruso, don't let her move, and don't let her fall to the ground.  See id. at 21:17-19.  Solorio put on gloves and pulled Caruso's shorts and underwear to the ground, leaving Caruso naked from the waist down.  See id. at 21:17-23; PUM 65.  The table and Caruso may have been in front of and in plain view of the open cell door.  See PUMF's 60-61, 63.  There were no curtains, but no other inmates were in the cell and other inmates from the nearby cell could not see directly into Cell 3.  See PUMF 63; Ingram Depo. at 69:7-18.  Ingram testified that the hallway in front of Cell 3 was not unlocked during the search and there should not have been any inmates in that hallway.  See Ingram Depo. at 88:2-16.  Caruso began to cry, told officers that they did not have to do this, offered to get the bindle out herself, and tried to reach her hand down to the bindle.  See id. at 21:23-25.  Solorio twice put her fingers between Caruso's buttocks near Caruso's anus before finally being able to remove the bindle.[5]  See PUMF 66; Caruso Depo.

---

[5] The bindle contained eight smaller bindles which tested positive for methamphetamine and heroine.  DUMF 26.

21:23-22:8. Caruso was then stood up, and three times she asked the officers if they could pull her

shorts and underwear up. See Caruso Depo. 22:21-23:2. Ingram finally ordered Lopez to pull

Caruso's pants up. See id. at 23:2-3; PUMF 73. Lopez and Caruso were able pull Caruso's shorts

back up. See Caruso Depo. 23:4-11. Solorio and Lopez helped Caruso to the ground, and Ingram

retrieved a wheelchair. DUMF 22.[6] Ingram testified that there was a possibility that there was

something wrong with Caruso's back and he did not want her on her feet any longer than

necessary. See Ingram Depo. 80:17-20. Caruso had a chrono for intermediate wheelchair use.

See Caruso Depo. 23:12-15. Solorio and Lopez then placed Caruso in the wheelchair. DUMF 23.

Caruso was placed in the wheelchair while she remained handcuffed behind her back. See

PUMF 78. Because of the handcuffs, Caruso had difficulty sitting in the wheelchair. See PUMF

79. Solorio pulled up on the handcuffs and raised Caruso's arms behind the wheelchair, causing

Caruso excruciating pain. PUMF 80. Because she was handcuffed behind her back, Caruso had

to sit sideways in the wheelchair and in a jack-knife position. PUMF 81. Caruso repeatedly

complained that ISU staff were hurting her and that she should not be handcuffed behind her back.

PUMF 82. ISU staff took Caruso's bed sheet and tied Caruso to the wheelchair by her waist. See

Caruso Depo. 24:4-8. At approximately 12:45 p.m., Solorio and Lopez transported Caruso in the

wheelchair to the ISU office. See PUMF 87. Solorio and Lopez refused to call medical staff until

after Caruso agreed to submit to an unclothed body search. PUMF 88. Solorio and Lopez

conducted an unclothed body search of Caruso at the ISU office. PUMF 89.

At approximately 1:25 p.m., Caruso was seen by RN Franco for a medical evaluation at the

ISU office. See PUMF's 93, 94. Franco evaluated Caruso for 10 to 20 minutes. See PUMF 96.

Caruso complained about pain in her neck and back, that the handcuffing had caused her to fall to

the floor, and that she was improperly handcuffed behind her back. See PUMF's 98, 100, 104.

Franco did not diagnose Caruso with any acute injury. See DUMF 27; PRDUMF 27. Franco did

not elevate Caruso's care in any manner. DUMF 28.

---

[6] Caruso disputes DUMF 22 by citing PUMF's 1 to 6, 20, and 28 to 35. PUMF's 1 to 6 deal with Caruso's medical condition, PUMF 20 deals with Caruso being handcuffed behind her back, and PUMF's 28 to 35 do not address defendants' actions after the bindle was retrieved. Therefore, DUMF 22 is undisputed.

At approximately 3:45 p.m., Solorio and Lopez took Caruso to the Facility B Program Office. PUMF 109. At 6:05 p.m., Lopez and Martinez transported Caruso to Administrative Segregation. PUMF 113. Caruso was handcuffed behind her back while in the Facility B Program Office and during transport to Administrative Segregation. See PUMF's 112, 114. Handcuffs were removed from Caruso in Administrative Segregation. PUMF 115. Aside from the period during the unclothed body search, Caruso was handcuffed behind her back for more than six hours. PUMF 116.

## DEFENDANTS' MOTION

### I. Behind the Back Handcuffing in Violation of the Eighth Amendment

#### *Defendants' Argument*

Defendants argue that the credible intelligence regarding contraband in Cell 3 combined with Caruso's disobedience of orders and suspicious actions justified handcuffing Caruso. Plaintiff was passively resisting Defendants' efforts to search for contraband. Caruso was not being assaulted or abused as part of a malicious search, rather she was an inmate who forced staff to use the requisite amount of force to overcome that resistance. Further, there is no evidence that the handcuffing or jerking of Caruso's arms caused Caruso any injury.

#### *Plaintiff's Opposition*

Caruso argues *inter alia* that Defendants acted maliciously and sadistically by refusing to comply with the handcuffing chrono in the face of her repeated complaints of pain and pleas for front cuffing. The medical chrono was posted on the locker, but Defendants stated that they did not care about the chrono. Further, Caruso argues that she was compliant and not a threat to the officers. Nothing warranted the continued use of the handcuffs behind Caruso's back or the Defendants' actions in disregarding her complaints and pleas. This conduct is not merely *de minimis*, it is repugnant. [7]

---

[7] The Court notes that Caruso also argues in part that her cuff in front chrono was rescinded on July 24, 2013, two days after the incident with Defendants. However, while there appears to be no dispute that the chrono was rescinded by Dr. Romero, Caruso cites no evidence that ties any actions by Dr. Romero to any defendant. The mere fact that Caruso's chrono was rescinded on July 24, 2013, without more, is not relevant to whether any defendant violated Caruso's Fourth or Eighth Amendment rights on July 22, 2013.

8

*Legal Standard*

2    A convicted prisoner is protected from excessive force by the Eighth Amendment.  P.B. v.

3  Koch,  96 F.3d 1298, 1302 n.4 (9th Cir. 1996).  The "core judicial inquiry" in Eighth Amendment

4  excessive force cases is "whether force was applied in a good-faith effort to maintain or restore

5  discipline, or maliciously and sadistically to cause harm."  Hoard v. Hartmann, 904 F.3d 780, 788

6  (9th Cir. 2018) (quoting Hudson v. McMillian, 503 U.S. 1, 7  (1992)).  There are two general

7  components to an excessive force claim:  "(1) a "subjective" inquiry into whether prison staff

8  acted "with a sufficiently culpable state of mind"; and (2) an "objective component" that asked

9  whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional

10  violation."  Bearchild v. Cobban, 947 F.3d 1130, 1140 (9th Cir. 2020) (citing Hudson, 503 U.S. at

11  8).  The subjective inquiry "turns on whether force was applied in a good faith effort to maintain

12  or restore discipline or maliciously and sadistically for the very purpose of causing harm."

13  Hudson, 503 U.S. at 6; Bearchild, 947 F.3d at 1140.  "[A]n officer who harms an inmate as part of

14  a good-faith effort to maintain security has acted constitutionally, but an officer who harms an

15  inmate 'for the very purpose of causing harm,' has engaged in excessive force, provided that the

16  other elements of excessive force have been met."  Hoard, 904 F.3d at 788.  The objective

17  component of an Eighth Amendment excessive force claim is "contextual and responsive to

18  'contemporary standards of decency.'"  Hudson, 503 U.S. at 8; Bearchild, 947 F.3d at 1140.

19  There is no "categorical standard" for showing objective harm under the Eighth Amendment,

20  rather there are goalposts.  Bearchild, 947 F.3d at 1141.  A "serious injury" is not required, but *de*

21  *minimis* force is not actionable so long as it is not "of a sort 'repugnant to the conscience of

22  mankind.'"  Hudson, 503 U.S. at 9-10; Bearchild, 947 F.3d at 1141.  When prison officials

23  maliciously and sadistically use force to cause harm, contemporary standards of decency always

24  are violated, irrespective of whether a significant injury is evident.  Hudson, 503 U.S. at 9;

25  Bearchild, 947 F.3d at 1141; see also Hoard, 904 F.3d at 788.

26    *Discussion*

27    With respect to the subjective inquiry, at the time of the incident, Caruso had a neck and

28  spinal condition for which she was receiving prison accommodations.  One of those

accommodations was a chrono to be handcuffed in front. When Lopez began to handcuff Caruso, Caruso immediately began to inform the Defendants that she had a chrono for front cuffing. After Lopez handcuffed Caruso behind her back, Caruso repeatedly complained about pain and that she had a chrono for front cuffing. Caruso informed the officers that the goldenrod-colored chrono was taped on the open lid of her locker, which was by the cell door. No Defendant acknowledged the chrono or took steps to independently verify the chrono's existence. In fact, Caruso's evidence indicates that Ingram lied about not seeing the chrono. Defendants jerked and maneuvered Caruso by the handcuffs in such a way as to hinder her movement and cause her pain. Defendants kept Caruso cuffed behind her back the entire time she was at Cell 3 and in the wheelchair during transport to the ISU office. During that ride, Caruso had to sit in a contorted position because of the pain caused by the behind the back cuffing. Solorio raised Caruso's arms over the back of the wheelchair for some unknown reason, which resulted in more pain to Caruso. Further, it is unclear why it was necessary to keep Caruso handcuffed behind her back. There is no evidence that Caruso was combative, and keeping Caruso handcuffed behind her back would seem to make it easier for her to access the bindle (or perhaps other objects) that she had secreted between her buttocks. Viewing this evidence in the light most favorable to Caruso, because it indicates that the Defendants purposefully disregarded a valid medical chrono for front cuffing, jerked and maneuvered Caruso by the handcuffs which caused audible and noticeable pain, and have not adequately explained why Caruso could not be handcuffed in front, a reasonable jury could concluded that handcuffing and maintaining the handcuffs behind Caruso's back was done "maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6; Bearchild, 947 F.3d at 1140.

Defendants' motion cites Page 3 of the expert report of Lt. Jeffery Watkins to argue that the handcuffing was justified for a valid penological interest. Page 3 of Watkins's report states that the intelligence regarding contraband in Cell 3, combined with the observation of Caruso acting suspiciously, raised legitimate concerns about evidence preservation. See Doc. No. 187-4 at ECF p.71. Watkins opines that the concern to preserve evidence justified the handcuffing. See id. The Court agrees that there was a valid penological reason to handcuff Caruso. Defendants

had credible intelligence that contraband was in Cell 3, and Lopez actually saw Caruso place the drug bindle down the the back of her pants. However, what is not addressed in Watkins' opinion is why Caruso was handcuffed behind her back. Watkins' opinion does not address the medical chrono, Caruso's pain, or why handcuffing in front could not be performed. Because the chrono and Caruso's pain is not addressed, Watkins' expert report does not justify summary judgment.

With respect to the objective inquiry, Defendants focus on a lack of serious injury suffered by Caruso. Caruso disputes that she did not suffer a serious injury.[8] The Court does not need to decide whether Caruso suffered a serious injury. As discussed above, the evidence indicates that Defendants knew about and ignored a chrono for front cuffing, maintained behind the back cuffing, jerked Caruso around by the handcuffs causing her pain, and transported her in a wheelchair in an awkward position while causing her pain because of the handcuffs. In other words, the evidence viewed in the light most favorable to Caruso indicates that Defendants maliciously and sadistically used force to harm Caruso, which means the absence of a serious injury is irrelevant. See Hudson, 503 U.S. at 9; Bearchild, 947 F.3d at 1141; Hoard, 904 F.3d at 788.

In sum, a reasonable jury could find that Defendants used excessive force against Caruso by handcuffing her behind the back (in knowing disregard of a valid medical chrono) and then maneuvering her by the handcuffs in such a manner as to cause pain. Summary judgment in favor of Defendants on this cause of action is inappropriate.


**II.** **Unreasonable Searches in Violation of the Fourth Amendment**

*Defendants' Argument*

Defendants argue that the search of Caruso was reasonable. There is no evidence that a male staff member performed a search. Instead, the undisputed facts show that Solorio conducted a pat-down search and reached into Caruso's waistline to retrieve the cellphone and drug bindle.

---

[8] The Court notes that Caruso in part relies on PUMF 146, which purports to be a statement that a doctor told Caruso. See PUMF 146. The evidence cited in support of PUMF 146 is Caruso's own deposition. However, while statements a person makes to a doctor for purposes of a medical diagnosis or treatment are an exception to the hearsay rule, see Fed. R. Evid. 803(4), the statements that a doctor makes to a patient are not excepted. See Bulthuis v. Rexall Corp., 789 F.2d 1315, 13xx (9th Cir. 1985). As constructed, PUMF 146 is inadmissible hearsay.

This was consistent with California regulations.  However, even if male officers were present, their mere presence or casual observation in furtherance of prison needs was not so degrading as to violate the Fourth Amendment.  Caruso's resistance and sitting on the floor necessitated the assistance of Ingram to maintain control and place Caruso on the table for the pat-down search. Staff are permitted by regulation to perform a clothed or unclothed search of a prisoner to preserved institutional safety.  The defendants had a credible tip that Cell 3 harbored contraband and they found contraband on Caruso.  The drug bindles posed a threat not only to Caruso but to other inmates and raised legitimate security concerns.  Permitting any delay in conducting the search of Caruso would have allowed her to possibly dispose of or secrete the contraband and prevent staff from abating the threat.  It is unreasonable to expect staff to not search in the face of a credible tip and a prisoner acting suspiciously.  Finally, the search occurred in Caruso's cell, which afforded Caruso privacy.

### Plaintiff's Opposition

Caruso argues that cross-gender searches pose a high probability of harm and are problematic under the Fourth Amendment.  Proper evaluation of the searches is dependent on numerous disputed material issues of fact.  The parties dispute how much of Caruso's clothing was removed, whether her naked body was exposed, whether male staff participated in the search, whether male staff could observe the search, whether Cell 3 was visible to others from the open doorway, and whether Caruso posed a threat to others.  There was no reason why they could not have conducted the strip search in another location, just as they did later in the day in an early July 2013 incident.  These material disputes prevent summary judgment.

### Legal Standard

The Fourth Amendment provides a limited right to bodily privacy in prison.  See Bull v. City & Cty. of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010); Mitchenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  In general, courts evaluate the reasonableness of a bodily search of a prisoner under the Fourth Amendment by considering:  (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.  Bell v. Wolfish, 441 U.S. 520, 559 (1979); Mitchenfelder, 860 F.2d at

332; <u>Grummett v. Rushen</u>, 779 F.2d 491, 495 (9th Cir. 1985). Cross-gender pat-down searches that "are done briefly and while the inmates are fully clothed, and thus do not involve intimate contact with the inmates," and are performed "in a professional manner," do not violate the Fourth Amendment. <u>Grummett</u>, 779 F.2d at 496; <u>see</u> <u>Byrd</u>, <u>Byrd v. Maricopa Cty. Sheriff's Dep't</u>, 629 F.3d 1135, 1141 (9th Cir. 2011). However, a strip search,[9] even if conduct with all due courtesy, is a "frightening and humiliating" experience. <u>Byrd</u>, 629 F.3d at 1142. "The desire to shield one's clothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." <u>York v. Story</u>, 324 F.2d 450, 455 (9th Cir. 1963). The Ninth Circuit has upheld policies regarding cross-gender observation of a prisoner's intimate body areas where the cross-gender participation was infrequent, irregular, or from a distance. <u>See</u> <u>Byrd v. Maricopa Cty. Bd. of Supervisors</u>, 845 F.3d 919, 922 (9th Cir. 2017) (discussing <u>Mitchenfelder</u>, 860 F.2d at 334; <u>Grummett</u>, 779 F.2d at 495). Consistent with *Mitchenfelder* and *Grummett*, the Ninth Circuit has approved the observation of the First Circuit: "inadvertent, occasional, casual, and/or restricted observations of inmate's naked body by a guard of the opposite sex [does] not violate the Fourth Amendment, [but] if the observation was other than inadvertent, occasional, casual, and/or restricted, such observation would (in all likelihood) violate the Fourth Amendment, except in an emergency situation." <u>Byrd</u>, 629 F.3d at 1144 (quoting <u>Cookish v. Powell</u>, 945 F.2d 441, 447 (1st Cir. 1991)). Therefore, cross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches. <u>Byrd</u>, 629 F.3d at 1146.

*Discussion*

1.   Cell Phone Search

Under Caruso's version events, Caruso had been escorted back into her cell by Solorio and Lopez. Caruso was handcuffed behind her back and was having difficulty walking because of the pain caused by Solorio and Lopez jerking on the handcuffs. Caruso's deposition indicates that she

---

[9] "A strip search, though an umbrella term, generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A 'visual body cavity search' extends to visual inspection of the anal and genital areas. A 'manual body cavity search' includes some degree of touching or probing of body cavities." <u>Cookish v. Powell</u>, 945 F.2d at 444 n.5.

13

went down to the ground, and while she was down, Lopez conducted a pat down search and felt the cell phone through Caruso's clothes.  <u>See</u> Caruso Depo. at 36:15-37:15.  Lopez declined Caruso's request to get the cell phone, and instead reached down Caruso's underwear and retrieved it.  <u>See id.</u>  At the time, Ingram had not ordered Martinez to go into Cell 3, and it does not appear that Ingram was present.  18:10-15, 36:14-38:2.

Applying the *Bell* factors, the above facts do not demonstrate an unconstitutional search. First, in terms of the location of the search, Caruso was searched in her cell, Littlefield was standing outside Cell 3 facing a wall, and Ingram has testified that no other inmates (aside from Littlefield) should have been in the hallway outside of Cell 3.  In other words, the search was conducted in a relatively private location.  Second, in terms of the search's justification, Lopez did not search Caruso randomly.  Lopez was at Cell 3 based on credible evidence that there was contraband present.  Importantly, Lopez had seen Caruso put a bindle of drugs in Caruso's pants/underwear, <u>see</u> PUMF 39, and Lopez later felt the cell phone as part of a pat-down search. <u>See</u> Caruso Depo. 36:15-37:15.  Lopez had probable cause to believe that Caruso had secreted contraband in the front of Caruso's pants/underwear.  Third, the scope of the search was limited, albeit to an intimate area of Caruso's body.  Finally, in terms of the manner of the search, there were no men present since Ingram had not yet ordered Martinez to help lift Caruso up.  No parts of Caruso's body were exposed and no clothes were removed.  There is no evidence that Lopez actually touched Caruso's vagina or unnecessarily lingered around Caruso's vaginal area.  The evidence shows that Lopez simply reached into Caruso's pants and underwear and retrieved the cell phone that Caruso had secreted in her pelvic area.  Under the *Bell* factors, the Court concludes that the search conducted by Lopez was a reasonable effort to retrieve the cell phone/contraband secreted by Caruso and did not violate the Fourth Amendment.  Summary judgment is appropriate.

## 2.    Bindle Search

Under Caruso's version of events, Lopez had seen Caruso place a bindle down the back of her pants or underwear.  Caruso was handcuffed behind her back and repeatedly telling Defendants that she was in pain, had a medical condition, and had a chrono for front cuffing. Moving was difficult for Caruso because of the handcuffs and ISU staff jerking on the handcuffs,

which caused her pain. Once outside of the cell, she was moving around because of pain. Ingram ordered that Caruso be taken to the shower in Cell 3 for an unclothed search. In the course of going back to Cell 3, Caruso fell several times and did not want to get back up because of the pain. On the ground, Lopez recovered the cell phone. Martinez and Ingram later entered Cell 3 and helped to lift Caruso. Solorio began to conduct a pat-down search, that included the removal of one of two pairs of shorts and looking inside Caruso's underwear. When Solorio stated that she saw the bindle, Ingram moved a table and instructed the other Defendants to lean Caruso over the table. Ingram told the Defendants to hold Caruso on the table so that she would not fall. Ingram, Martinez and Lopez held Caruso down on the table with her head turned to the side, which caused Caruso pain. Solorio then pulled Caruso shorts and underwear down, leaving Caruso's naked buttocks and vaginal area exposed. Solorio swiped her fingers twice between Caruso's buttocks near the anus and retrieved the bindle on the second swipe. When the search was done, Caruso had to ask three times for her shorts to be pulled up before Ingram assented.

The above facts demonstrate that this was not, as Defendants contend, a clothed search. Caruso alleges in no uncertain terms that her underwear was pulled down to below her knees and her buttocks and vaginal areas were completely uncovered and exposed. The proper classification of this search is not necessary. Cf. Powell, 945 F.2d at 444 n.5 (defining "strip search," "visual body cavity search," and "manual body cavity search"). It is sufficient to conclude that Caruso was subject to something that was more intrusive than a "typical" strip search (because the area between her fully exposed buttocks was touched), but less intrusive than a manual cavity search (because there is no evidence that Caruso's anus was touched or probed). Further, Martinez and Ingram were on either side of Caruso holding her down on the table to keep her from falling. Although it is clear that neither Martinez nor Ingram pulled down Caruso's underwear, searched between Caruso's buttocks, or touched Caruso in an intimate area, they were present and participating in the search of Caruso's body. Under *Byrd*, unless there were emergency circumstances, the Fourth Amendment was violated. See Byrd, 629 F.3d at 1146.

Defendants argue that delaying the search would have been improper proper because Caruso could have disposed of or secreted the contraband, or, in the event of secretion, Caruso

could have overdosed or harmed herself in that process. However, at the time of the search, Caruso was already handcuffed and there were a total of six ISU officers present, three of whom were females. It is unknown how Caruso could have disposed of or secreted the drugs once she was handcuffed.[10] Further, although Lopez saw Caruso secret a drug bindle down the back of her shorts/underwear, there is no testimony or indication that the bindle posed an imminent threat to Caruso. In *United States v. Cameron*, 538 F.2d 254, 257, 259 (9th Cir. 1976), which was decided in the context of a border search, the Ninth Circuit held that there was no emergency that required an immediate attempt to search for drugs that were believed to be located in an individual's rectal cavity. See also United States v. Fowlkes, 804 F.3d 954, 959, 966 (9th Cir. 2015) (finding no emergency situation where an arrestee was suspected of having secreted drugs in his rectum and was handcuffed and surrounded by five officers). Without more, the Court cannot hold that that the drug bindle between Caruso's buttocks constituted an emergency situation as a matter of law. See Fowlkes, 804 F.3d at 966; Cameron, 538 F.2d at 259.

In sum, under Caruso's version of events, Defendants conducted an intrusive cross-gender strip search in the absence of an emergency. Under *Byrd*, summary judgment in favor of Defendants is inappropriate. See Byrd, 629 F.3d at 1146.


## **III.**   **Qualified Immunity**

### *Parties' Argument*

Defendants argue that the law was not sufficiently settled, either as to the Eighth Amendment excessive force claim or the Fourth Amendment unreasonable search claim. Because the law was not settled, qualified immunity is appropriate.

Caruso argues that the facts demonstrate that a reasonable officer would have known that ignoring the chrono and causing pain was an Eighth Amendment violation. Also, pursuant to *Byrd v. Maricopa County Sheriff's Dept.*, 629 F.3d 1135 (9th Cir. 2011) and *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993), qualified immunity cannot be granted on the Fourth Amendment search claim.

---

[10] This is true whether she was handcuffed in the front or behind her back.

1 | *Legal Standard*

2     Qualified immunity applies when an official's conduct does not violate clearly established

3 statutory or constitutional rights of which a reasonable person would have known. <u>White v. Pauly</u>,

4 137 S. Ct. 548, 551 (2017).  Officers are entitled to qualified immunity under § 1983 unless (1) the

5 officers violate a federal a federal statutory or constitutional right, and (2) the unlawfulness of

6 their conduct was "clearly established at the time." <u>District of Columbia v. Wesby</u>, 138 S.Ct. 577,

7 589 (2018); <u>White</u>, 137 S.Ct. at 551. "Clearly established" means that the statutory or

8 constitutional question was "beyond debate," such that every reasonable official would understand

9 that what he is doing is unlawful. <u>See</u> <u>Wesby</u>, 138 S.Ct. at 589; <u>Vos v. City of Newport Beach</u>,

10 892 F.3d 1024, 1035 (9th Cir. 2018).  This is a "demanding standard" that protects "all but the

11 plainly incompetent or those who knowingly violate the law." <u>Wesby</u>, 138 S.Ct. at 589 (citing

12 <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  To be "clearly established," a rule must be dictated

13 by controlling authority or by a robust consensus of cases of persuasive authority. <u>Id.</u>; <u>see also</u>

14 <u>Perez v. City of Roseville</u>, 882 F.3d 843, 856-57 (9th Cir. 2018) (noting that Ninth Circuit

15 precedent is sufficient to meet the "clearly established" prong of qualified immunity).  In

16 examining whether a rule/right is clearly established, courts are to define the law to a "high degree

17 of specificity," and not "at a high level of generality." <u>Wesby</u>, 138 S.Ct. at 590.  The key question

18 is "whether the violative nature of particular conduct is clearly established" in the specific context

19 of the case. <u>Vos</u>, 892 F.3d at 1035 (quoting <u>Mullenix v. Luna</u>, 136 S.Ct. 305, 308 (2015)).

20 Although it is not necessary to identify a case that it is "directly on point," generally the plaintiff

21 needs to identify a case where an officer acting under similar circumstances was held to have

22 violated federal right. <u>Wesby</u>, 138 S. Ct. at 577; <u>Vos</u>, 892 F.3d at 1035; <u>Shafer v. City of Santa</u>

23 <u>Barbara</u>, 868 F.3d 1110, 1118 (9th Cir. 2017).  Whether a constitutional right was violated is

24 generally a question of fact for the jury, but whether a right was clearly established is a question of

25 law for the judge. <u>Morales v. Fry</u>, 873 F.3d 817, 823 (9th Cir. 2017).

26     *Discussion*

27     <u>1.</u>    <u>Eighth Amendment – Handcuffing</u>

28     Caruso has not identified a case that shares a materially similar fact pattern as this case.

However, under Caruso's version of the facts, no such case is necessary. Defendants do not

dispute that they are expected to follow an inmate's valid medical chrono, nor do Defendants

dispute that Caruso had a valid chrono for frontal handcuffing. Caruso repeatedly cried out in

pain, told Defendants that she had a chrono, told the Defendants were the chrono was, and the

chrono was on yellow paper and visible to the Defendants. Despite this, Defendants ignored

Caruso's pleas, ignored the chrono, and denied seeing the chrono. Defendants kept Caruso

handcuffed behind her back and maneuvered her in such a way as to cause pain. In other words,

Caruso's version indicates that the Defendants new about the chrono, new that Caruso was in pain,

but chose to disregard the chrono and chose to continue to cause her pain. Since at least 1986, it

has been clear that "the unnecessary and wanton infliction of pain . . . constitutes cruel and

unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319

(1986); see also Hudson, 503 U.S. at 5 (quoting *Whitley*). Defendants have not identified an

emergency situation that would justify their willful blindness to the chrono and Caruso's pain.

The Court concludes that the law was sufficiently settled that reasonable officers in Defendants'

positions would have known that their conduct was violating Caruso's Eighth Amendment rights.

See Hudson, 503 U.S. at 5; Vos, 892 F.3d at 1035. Qualified immunity is inappropriate.

2.    Fourth Amendment – Bindle Search

Caruso again has not identified a case that has a substantially similar fact pattern to the

facts of this case, but she does cite *Byrd*. Since 2011, it has been the law in the Ninth Circuit that

"cross-gender strip searches in the absence of an emergency violate an inmate's right under the

Fourth Amendment to be free from unreasonable searches." Byrd, 629 F.3d at 1146. Caruso has

demonstrated that intimate areas of her body were exposed during an intrusive strip search in the

presence, and with the participation, of two male correctional officers. Defendants have not

adequately demonstrated that an "emergency" existed as a matter of law. Therefore, *Byrd*'s

prohibition applies. Under Caruso's version of events, the law was sufficiently settled that

reasonable officers in Defendants' positions would have known that their conduct was violating

Caruso's Fourth Amendment rights. See Vos, 892 F.3d at 1035; Byrd, 629 F.3d at 1146.

Qualified immunity is not appropriate.

# IV. Other Constitutional Claims

## A. Eighth Amendment Sexual Assault

### *Plaintiff's Argument*

In supplemental briefing, Caruso argues that her claim for excessive force includes allegations of inappropriate sexual touching. Under *Bearchild*, if a prisoner proves that a guard committed a sexual assault, it can be presumed that the force was excessive, the guard acted maliciously for the purpose of causing harm, and the prisoner suffered an injury. Construing all disputed facts in Caruso's favor, *Bearchild* shows that Plaintiff has proof of a sexual assault. Caruso argues that she was sexually assaulted twice, once when the cell phone was recovered and once when the bindle was recovered, because Solorio and Lopez touched near her vaginal and anal areas. In her internal prison appeal dated August 9, 2013, she complained that the strip search made her feel that she was violently raped when the drugs were removed from her buttocks and that her buttocks and vagina were exposed to others. In her first amended complaint, she alleged that female guards touched her inside of her underwear, near her vagina and again by putting fingers inside of her butt cheeks and near her anus. She alleged that she felt like she was being raped. In her second amended complaint, Caruso specifically alleged that her butt and vaginal areas were fully exposed while Solorio conducted a cavity search. Although Caruso did not label the improper touching as a "sexual assault" in any of her complaints, she clearly asserted sexual assault aspects as part of her excessive force claim in all three complaints.

Caruso also argues that the screening orders issued by Judge Grosjean did not dispose of the sexual assault claim. The last screening order held that there were valid claims for excessive force under the Eighth Amendment and unreasonable search under the Fourth Amendment. The screening order did not dismiss any allegations of improper sexual touching. The Court adopted in full the last screening order by Judged Grosjean. "There is no question that Ms. Caruso's claim of sexual assault remains pending in this lawsuit." Doc. No. 231: 3:19-20. Caruso was not required to separately allege a claim of sexual assault. The Ninth Circuit has consistently placed prisoner sexual assault claims within the same legal framework as excessive force claims. Because the Court previously concluded that Caruso stated a cognizable claim for excessive force,

her sexual assault claim is necessarily subsumed by her excessive force claim and Caruso was under no obligation to amend the complaint to add a claim for sexual assault.

*Defendants' Arguments*

Defendants argue that Caruso is improperly attempting to amend her complaint because there are no claims of sexual assault in the SAC.  Sexual assault claims were not found in the screening order of the SAC,  Caruso did not object to the screening order of the SAC, Caruso did not attempt to add a sexual assault claim as part of her motion to supplement/amend the SAC,[11] and Plaintiff's deposition and SAC did not contain allegations of sexual assault.  Raising a sexual assault claim for the first time in opposition to summary judgment is improper.  The SAC contains no allegations of sexual abuse, and the facts of this case are not comparable to the facts in *Bearfield*.

*Relevant Screening Orders*

     1.    May 2017 Screening Order

The SAC was screened by the Magistrate Judge on May 16, 2017.  The screening order ("May SO") concluded that the SAC "states cognizable claims against defendants Ingram, Martinez, Lopez, and Solorio for excessive force in violation of the Either Amendment and an unreasonable search in violation of the Fourth Amendment.  *The Court finds no other claims against these defendants or against any other defendants.  All other claims and defendants will be dismissed.*"  Doc. No. 24 (emphasis added).  Consistent with this conclusion, the Magistrate Judge ordered that this "case proceed on Plaintiff's claims against defendants Ingram, Martinez, Lopez, and Solorio for excessive force in violation of the Eighth Amendment and an unreasonable search in violation of the Fourth Amendment . . . All other claims and defendants are DISMISSED[.]" Id.  In terms of the Eighth Amendment excessive force violation, the May SO adopted the analysis of the prior screening order of the First Amended Complaint.  Id.  That analysis found that the allegations concerning the strip search did not appear to be based on malicious conduct, the search of Caruso's "private areas" was related to the placement of the contraband and not malice, and the

---

[11] Caruso filed a motion to supplement/amend the SAC on September 26, 2019; the motion was denied on November 14, 2019.  See Doc. Nos. 175, 192.

20

fact that mixed gender staff were involved did not render the search unconstitutional, particularly because it was alleged that Solorio stated that she saw Caruso put something in her shorts. See Doc. No. 18 at 7:9-23. However, the "part of the complaint that is troubling is the allegation regarding handcuffing." Id. at 7:24-25. It was noted that Caruso immediately told Lopez about a front cuffing chrono, Lopez ignored Caruso, Martinez ignored Caruso's protestations about a chrono, and Ingram falsely stated that he did not see the chrono that was right in front of him on the locker door. See id. at 7:25-8:8. The aspect of the search that was found to state a plausible Eighth Amendment claim was Defendants ignoring the chrono, handcuffing Caruso behind her back, and maneuvering Caruso's arms in such a way as to cause Caruso pain. See id. at 7:24-8:10. Caruso neither objected nor sought reconsideration of the May SO.

### 2. December 2017 Findings & Recommendation and Order Adopting

On December 7, 2017, the Magistrate Judge issued a findings and recommendation ("F&R") in light of *Williams v. King*, 875 F.3d 500 (9th Cir. 2017), which held that 28 U.S.C. § 636(c)(1) requires the consent of all parties, irrespective of service process, before jurisdiction vests in a magistrate judge to hear and decide civil cases. See Doc. No. 45. The F&R explained that it would recommend "dismiss[ing] the claims and defendants previously dismissed by this Court, for the reasons provided in the Court's screening order." Id. 2:10-12. With respect to the Eighth Amendment excessive force claim, the F&R repeated the factual recitation regarding Caruso informing Defendants of the chrono, the Defendants essentially ignoring Caruso, Ingram falsely stating that he did not see the chrono, and Defendants causing Caruso pain by handcuffing her behind her back and then jerking her arms around. See id. at 8:7-23. The F&R found that "the allegations about this aspect of the search state an Eighth Amendment claim for excessive force." Id. The F&R recommended that "all claims and defendants, except for Plaintiff's claims against defendants Ingram, Martinez, Lopez, and Solorio for excessive force in violation of the Eighth Amendment and for an unreasonable search in violation of the Fourth Amendment, be dismissed." Id. at 10:16-19. No objections to the F&R were filed.

### 3. January 2018 Order Adopting

On January 11, 2018, the Court adopted the F&R in full. See Doc. No. 53. The Court

ordered that "All claims and defendants, except for Plaintiff's claims against defendants Ingram, Martinez, Lopez, and Solorio for excessive force in violation of the Eighth Amendment and for an unreasonable search in violation of the Fourth Amendment, are dismissed." Id. No objections or requests for reconsideration were ever filed with respect to the order adopting the F&R.

*Discussion*

As indicated above, the operative complaint in this matter is the SAC. The Original Complaint and the First Amended Complaint have been superseded, are no longer operative, and are treated as non-existent. Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 20015); Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Therefore, Caruso's reliance on allegations in the Original Complaint or the First Amended Complaint are improper. See id.

With respect to the SAC, the Court cannot conclude that Caruso has a sexual assault claim that remains an active part of this case. As the discussion above demonstrates, the screening order on the first amended complaint concluded that Caruso's allegations regarding the search of her "private areas" did not plausibly indicate that Defendants searched maliciously and with the intent to cause harm. See Doc. No. 18 at 7:9-23. That analysis was adopted in the May SO. See Doc. No. 24 at 7:18-20. That analysis does not expressly appear in the F&R, but the F&R was meant to be the mechanism by which the district court judge reviewed and adopted the May SO. See Doc. No. 45 at 2:10-12. Although the screening orders did not state that Caruso was attempting to allege a sexual assault or even use the term "sexual assault," the allegations regarding the search of Caruso's "private parts" were assessed in the screening process. More importantly, the May SO and the F&R expressly found that the particular aspect of the search that was troubling and that stated a claim under the Eighth Amendment was the handcuffing in disregard of Caruso's pain and a visible medical chrono. See Doc. Nos. 18:7:24-8:13, 24 at 7:18-20, 45 at 8:7-12. The May SO and the F&R clearly limited the nature of the Eighth Amendment claim that was found to be cognizable to excessive force from handcuffing. See id. Finally, the May SO, the F&R and the order adopting the F&R all made substantially the same ultimate order. An Eighth Amendment excessive force claim based on handcuffing, and a Fourth Amendment unreasonable search claim, both against Ingram, Lopez, Martinez, and Solorio, were found to be cognizable. See Doc. No. 24

at 9:24-27, 45 at 10:16-19, 53 at 2:1-4.  All other defendants and all other *claims* were dismissed

without leave to amend.  See id. (emphasis added).  The sexual assault claim is based on

materially different facts and uses of force than the Eighth Amendment handcuffing claim.  By the

terms of the May SO, the F&R, and the order adopting the F&R, the sexual assault claim falls

under the category of "all other claims"  and thus, was dismissed.  Caruso's arguments do not

adequately account for the analyses of the dismissals, the limiting language of the May SO and the

F&R that focused on a particular aspect of the incident, i.e. handcuffing, and the clear language

that dismissed all other claims.  Caruso's supplemental brief states that Defendants cannot rewrite

the procedural history of this case.  See Doc. No. 231 at 3:23-25.  By the same token, Caruso

cannot rewrite the screening orders of this case.  Caruso's characterization of the May SO, the

F&R, and the order adopting is unreasonable and wrong.

Caruso's reliance on *Bearchild* for the proposition that her cognizable excessive force

claim subsumed the sexual assault claim is misplaced.  It is true, as Caruso posits, that *Bearchild*

noted that the Ninth Circuit has "consistently placed prisoner sexual assault claims within the

same legal framework as excessive force claims."  Bearchild, 947 F.3d at 1140.  However,

*Bearchild* was explaining that "[p]risoner Eighth Amendment challenges generally fall into one of

three broad categories."  Id.  *Bearchild* was simply indicating that of the "three broad categories"

of prisoner Eighth Amendment claims, sexual assaults fall into the third category, excessive force.

See id.  By identifying the category, *Bearchild* was setting the general framework that courts use

to evaluate sexual assault claims.  *Bearchild* did not hold, or even suggest, that because sexual

assault claims fall under the broad excessive force category that every time an excessive force

claim is pled, a sexual assault claim would be included and subsumed *sub silentio*.  Moreover,

there is nothing about the handcuffing in this case that brings it within *Bearchild*'s definition of

sexual assault.  See id. at 1144.  Mere handcuffing is a materially different type of force from a

sexual assault, and the conduct that forms the basis of the handcuffing claim is different from the

conduct that forms the basis of the sexual assault claim.  Thus, even if *Bearchild* could be read as

indicating that sexual assault claims can be subsumed by other excessive force claims, such a rule

would not apply here.  Contrary to Caruso's arguments, *Bearchild* does not mean that Caruso's

sexual assault claim was subsumed by the excessive force handcuffing claim such that she did not have to explicitly allege it or attempt to add it in an amended complaint.

Therefore, to the extent that Caruso attempted to allege a sexual assault claim in the SAC, that claim is not part of this case because the Court adopting the F&R and dismissed all claims except the Fourth Amendment unreasonable search claim and the Eighth Amendment excessive force claim based on handcuffing.

Relatedly, the screening orders and the F&R concluded that no other claims were plausibly alleged. When a claim is not properly alleged in a complaint, raising that claim in opposition to summary judgment is improper and does not place the claim at issue. See Navajo Nation v. United States Forest Serv., 535 F.3d 1058, 1079-80 (9th Cir. 2008) (en banc); Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292-93 (9th Cir. 2000); see also Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1296-97 (11th Cir. 2006). Therefore, Caruso raising a sexual assault claim in opposition to summary judgment is improper. See id.

Alternatively, if the Court views the supplemental briefing as a request to amend the SAC under Rule 15 to include an Eighth Amendment sexual assault claim, see Desertrain v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir. 2014),[12] amendment would not be proper. First, waiting until an opposition to summary judgment to raise the sexual assault claim, particularly when a motion to amend was filed in September 2019, indicates undue delay. Second, discovery closed prior to Defendants filing the motion. Third, and most importantly, the facts presented by Caruso do not indicate that a sexual assault occurred. *Bearchild* held that "a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." Bearchild, 947 F.3d at 1144. Under Caruso's facts, Lopez saw Caruso put a drug bindle down the back of her underwear. See

---

[12] There appears to be friction between *Desertrain* and cases like *Navajo Nation*. However, because the result is ultimately the same under both *Desertrain* and *Navajo Nation*, the Court need not resolve that tension.

PUMF 39.  After Caruso was handcuffed and had fallen in Cell 3, Lopez conducted a pat-down search and felt something around Caruso's pelvic area.  See Caruso Depo. at 36:15-37:15.  Lopez then reached down Caruso's pants and underwear and retrieved the cell phone from around Caruso's pelvic/vaginal area.  See id.  Also, Solorio twice placed her fingers between Caruso's buttocks near Caruso's anus.  See PUMF 66.  Solorio did this twice because the first time she was unable to retrieve the bindle; Solorio retrieved the bindle the second time and then stopped searching.  See Caruso Depo. 21:23-22:8, 22:21-22.  There is no evidence that Caruso or Lopez actually touched Caruso's vagina or anus, or lingered unnecessarily around those areas, or massaged or touched around those areas in a sexual manner.  Rather, the evidence indicates that Solorio and Lopez did not linger any longer than necessary to retrieve the contraband and had to touch near Caruso's vagina and anus because that is where Caruso had secreted the contraband.  Therefore, the evidence shows a penological non-sexual basis for the search (retrieval of contraband) and does not show that Lopez or Solorio touched Caruso in a sexual manner or engaged in sexual conduct; they merely retrieved contraband that Caruso had secreted around intimate parts of her body.  Because the facts do not demonstrate a sexual assault under *Bearchild*, amending the complaint to include such a claim would be futile.  Leave to amend need not be granted when amendment would be futile.  Novak v. United States, 795 F.3d 1012, 1020 (9th Cir. 2015).

In sum, there is no Eighth Amendment sexual assault claim in this case.

**B.      Eighth Amendment Cross-Gender Search**

*Parties' Arguments*

Caruso argues that her Eighth Amendment cross gender claim is based on disputed facts, such as how much clothing was removed, was clothing removed in front of male staff, was her naked body exposed during the search, did male staff participate in the search and were they present when drugs were found?  Caruso argues that her facts show that ISU staff, including two males, conducted a strip search by holding her down on the table while her pants and underwear were pulled down past her knees and the bindle was removed from in between her buttocks, near her anus.  These facts demonstrate an Eighth Amendment violation.

1    Defendants argues that Caruso's search claim was found to cognizable under the Fourth

2    Amendment.  Therefore, the cross-gender claim should be analyzed only under the Fourth

3    Amendment.

4         *Discussion*

5         Defendants are correct.  As indicated above, the claims that were found cognizable and

6    permitted to go forward was an excessive force claim under the Eighth Amendment and an

7    unreasonable search claim under the Fourth Amendment.  Conspicuously absent from this list of

8    two claims is an unreasonable search claim under the Eighth Amendment.  In a motion to

9    supplement/amend the SAC, Caruso acknowledged that the May SO dismissed all claims except

10   for an Eighth Amendment excessive force claim and a Fourth Amendment unreasonable search

11   claim.  See Doc. No. 175-1 at ECF p.8:26-9:3.  The order adopting the F&R tracks the May SO.

12   Caruso's opposition does not address the order adopting the F&R or any of the relevant screening

13   orders.  These orders make clear that the only Eighth Amendment claim that is pending is one for

14   excessive force based on handcuffing, there is no Eighth Amendment search claim that is pending.

15   To the extent that Caruso attempted to allege such a claim, it was part of the "all other claims" that

16   were dismissed in the screening orders and the order adopting the F&R.  Caruso's argument that

17   she has an active Eighth Amendment search claim is clearly false.

18        As with the sexual assault claim, Caruso's pursuit of an Eighth Amendment cross-gender

19   search claim not only violates the screening process (Doc. Nos. 24, 45, 53), but improperly raises

20   the issue in opposition to summary judgment.   See Navajo Nation, 535 F.3d at 1079-80; Pickern,

21   457 F.3d at 968; Coleman, 232 F.3d at 1292-93; see also Hurlbert, 439 F.3d at 1296-97.  Caruso

22   submits no reasons why it would be appropriate to overlook this procedural problem and ignore

23   the relevant screening orders and the order adopting the F&R.[13]

24        Alternatively, even if the Court views the opposition as a request to amend, amendment

25   would not be appropriate.  First, waiting until an opposition to summary judgment to raise the

26   sexual assault claim, particularly when a motion to amend was filed in September 2019, indicates

27

28   _____
     [13] The Court again notes that no form of opposition or reconsideration was ever filed with respect to the May SO, the
     F&R, or the order adopting the F&R.

undue delay. Second, discovery closed prior to Defendants filing the motion. Third, amendment would be futile. The evidence indicates that the search was conducted to retrieve contraband that Lopez saw Caruso place in the back of Caruso's underwear/pants. That is, there was a legitimate penological purpose served by the search. Unlike Caruso's excessive force claim, the evidence does not suggest that the search was done maliciously or sadistically to cause pain. Moreover, even if the Court assumes that the evidence could support an Eighth Amendment violation, qualified immunity would be appropriate. Caruso cites *Byrd* and *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993), to argue that qualified immunity is improper. However, *Byrd* is a Fourth Amendment case that does not address the Eighth Amendment.[14] *Jordan*, on the other hand, was decided on Eighth Amendment grounds, but its fact pattern is materially different from this case. In *Jordan*, the Ninth Circuit found an Eighth Amendment violation where female prisoners were subjected to an official policy of random cross-gender clothed body searches. Jordan, 986 F.2d at 1525-28. *Jordan* did not involve a situation similar to this case. Here, Caruso was seen secreting contraband in an intimate area of her body, two male officers and a female officer held her down on the table to keep her from falling down, and a female officer performed pat-down search and manipulation of Caruso's exposed buttocks to find and retrieve the contraband. That is, unlike *Jordan*, this case involves particularized suspicion of contraband and a same-gender officer exposing and touching an intimate area of prisoner's body to retrieve detected contraband; it does not involve a policy of random searches. It is Caruso's burden to identify authority that would put the defendants on notice that their conduct violated her Eighth Amendment rights. See Wesby, 138 S. Ct. at 577; Vos, 892 F.3d at 1035; Shafer, 868 F.3d at 1118. Since the only Eighth Amendment case identified by Caruso is materially distinguishable from the facts of this case, she has failed to meet her burden. See id. Because the Defendants would be entitled to qualified immunity on Caruso's Eighth Amendment search claim, permitting amendment would be futile. See Novak, 795 F.3d at 1020; Sweaney v. Ada Cnty, 119 F.3d 1385, 1393 (9th Cir. 1997).

In sum, there is no Eighth Amendment cross-gender search claim in this case.

---

[14] In fact, *Byrd* explained that it was not relying on or discussing *Jordan*, an Eighth Amendment case, because *Jordan* did not discuss the Fourth Amendment. See Byrd, 629 F.3d at 1147 n.9.

1    **C.     Fourth Amendment Excessive Force**

2    *Parties' Arguments*

3    Caruso argues that the Ninth Circuit has long recognized that abusive use of handcuffs can

4    form the basis of Fourth Amendment excessive force claim.  Therefore, for the same reasons that

5    summary judgment should be denied on the Eighth Amendment handcuffing claim, summary

6    judgment should be denied on her Fourth Amendment excessive force claim.

7    Defendants do not expressly respond to this argument.

8    *Discussion*

9    There are problems with Caruso's Fourth Amendment theory.

10   First, contrary to her representation that she has or is pursuing a Fourth Amendment claim,

11   see Doc. No. 200 at 15:26-16:5, no such Fourth Amendment claim was found in the May SO, the

12   F&R, or the order adopting the F&R.  As explained, above, the claims that were found to be

13   cognizable were a Fourth Amendment search claim and an Eighth Amendment excessive force

14   claim based on handcuffing.  See Doc. Nos. 24, 45, 53.  All "other claims" were dismissed, which

15   would include a Fourth Amendment excessive force claim.  Caruso's opposition fails to mention

16   the screening orders or the order adopting the F&R.  Raising those claims now is a violation of

17   these orders.

18   Second, because the screening orders and the order adopting the F&R found no other

19   plausibly alleged claims, raising a Fourth Amendment excessive force claim in opposition to

20   summary judgment is improper.  See Navajo Nation, 535 F.3d at 1079-80; Pickern, 457 F.3d at

21   968; Coleman, 232 F.3d at 1292-93; see also Hurlbert, 439 F.3d at 1296-9).

22   Third, apart from any procedural difficulties, Caruso's position is contrary to over thirty

23   years of established federal law.  Caruso is a convicted prisoner, and the alleged excessive force

24   occurred at the hands of correctional officers while she was incarcerated.  "After conviction, the

25   Eighth Amendment serves as the primary source of substantive protection . . . in cases . . . . where

26   the deliberate use of force is challenged as excessive and unjustified."  Graham v. Connor, 490

27   U.S. 386, 395 n.10 (1989) (citing Whitley v. Albers, 475 U.S. 312, 327 (1986)); see Lanman v.

28   Hinson, 529 F.3d 673, 680 (6th Cir. 2008); Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238

(9th Cir. 2001); <u>Dennis v. Thurman</u>, 959 F.Supp. 1253, 1257 n.1 (C.D. Cal. 1997). That is, "[a]s a convicted prisoner, [Caruso] cannot bring a Fourth Amendment claim, which applies only to those not yet convicted." <u>Hawkins</u>, 251 F.3d at 1238. Therefore, as a matter of law, no Fourth Amendment claim for excessive force is available to Caruso.

In sum, there is no Fourth Amendment excessive force claim in this case.[15]

**IV.    Conclusion**

Defendants move for summary judgment on the claim alleged against them.

With respect to the Eighth Amendment excessive force claim based on handcuffing, summary judgment is inappropriate because under Caruso's version of events, a reasonable jury could conclude that Defendants disregarded the chrono by handcuffing Caruso behind the back and maneuvered her in such a way as to unnecessarily cause pain. Qualified immunity is also inappropriate because, under Caruso's version of events, a reasonable person in Defendants' position would know that it was unconstitutional to ignore the chrono and cause Caruso pain.

With respect to the Fourth Amendment unreasonable search claim, two searches are at issue. First, as to the search for the bindle, under Caruso's version of events, there appears to have been no emergency, yet two men were participating in an intrusive strip search of Caruso. Application of *Byrd* makes both granting summary judgment and qualified immunity improper. Second, the search for the cell phone was reasonable. Lopez felt the cell phone as part of a pat down search, quickly retrieved the cell phone, and did so outside the presence of men and without removing clothes or exposing Caruso's body. Therefore, summary judgment in favor of Defendants this claim is appropriate.

With respect to Caruso's purported Eighth Amendment sexual assault claim, summary judgment in favor of Defendants is appropriate because such a claim was not found cognizable in the screening process, raising the inadequately pled claim in opposition is improper, and the conduct of the Defendants does not meet the *Bearchild* test for a sexual assault.

---

[15] Given *Graham* and *Hawkins*, Caruso's arguments to the contrary arguably violate Rule 11(b)(2).

With respect to Caruso's purported Eighth Amendment cross-gender search claim, summary judgment in favor of Defendants is appropriate because such a claim was not found cognizable in the screening process and raising the inadequately pled claim in opposition is improper. Further, even assuming that Caruso has facts that could support such a claim, she did not adequately show that the law was settled. Therefore, Defendants would be entitled to qualified immunity.

Finally, with respect to Caruso's purported Fourth Amendment excessive force claim, summary judgment in favor of Defendants is appropriate because such a claim was not found cognizable in the screening process, raising the inadequately pled claim in opposition is improper, and the Fourth Amendment's prohibition against excessive force does not apply to Caruso as a matter of law.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that;

1. Defendants' motion for summary judgment (Doc. No. 187) is GRANTED with respect to Plaintiff's purported Eighth Amendment sexual assault claim, purported Eighth Amendment cross-gender search claim, purported Fourth Amendment excessive force claim, and the Fourth Amendment unreasonable search claim that is based on the retrieval of the cell phone; and

2. Defendants' motion for summary judgment (Doc. No. 187) is otherwise DENIED.

IT IS SO ORDERED.

Dated:   March 25, 2020      _____

                          SENIOR  DISTRICT  JUDGE