UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARUSO, | Case No. 1:15-cv-00780-AWI-EPG (PC) |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR ATTENDANCE OF INCARCERATED WITNESSES |
| v. | |
| OFFICER G. SOLORIO, et al., | (ECF NO. 224) |
| Defendants. | |

**I.   BACKGROUND**

This action is proceeding against defendants Ingram, Martinez, Lopez, and Solorio on Plaintiff's claims for excessive force in violation of the Eighth Amendment and for an unreasonable search in violation of the Fourth Amendment.  (ECF Nos. 24, 53, & 234).

On February 14, 2020, Plaintiff filed motion for attendance of incarcerated witnesses. (ECF No. 224).  On March 9, 2020, Defendants filed their opposition to the motion.  (ECF No. 229).

Plaintiff seeks to bring six inmate witnesses to trial: 1) Gigi Littlefield, CDCR #X27638; 2) Jennie Burgos, CDCR #W95185; 3) Meiko M. Leggett, CDCR #W93882; 4) Shachie Day, CDCR #W84764; 5) Rene Gonzalez, CDCR #W98673; and 6) Stephanie Ogilvie, CDCR #X26245.  (ECF No. 224).  Defendants object to the attendance of all six witnesses. (ECF No. 229).

For the reasons described below, the Court finds that all six witnesses should be brought

to testify at the upcoming trial.  Defendants may raise objections to their testimony at trial or in an appropriate pretrial motion.  Additionally, the parties are ordered to meet and confer regarding whether any or all witnesses may appear by video.

## II.     PLAINTIFF'S MOTION

In her motion, Plaintiff describes what each proposed prospective witness saw and/or heard.

### a.  Gigi Littlefield

"Gigi Littlefield both saw and heard the interactions between Ms. Caruso and ISU staff on July 22, 2013.  She was Ms. Caruso's cellmate and was present in the cell when ISU staff arrived to search Ms. Caruso.  ISU staff escorted Ms. Littlefield out of the cell and ordered her to face the opposite wall, across the hallway and outside of the cell door.  Standing just five feet outside of the opened doorway to their cell, Ms. Littlefield was able to hear what was occurring inside of the cell.  Among other things, Ms. Littlefield will testify that she knew Ms. Caruso had medical issues with her back and that she heard Ms. Caruso telling ISU staff that she had medical issues.  Ms. Littlefield also heard Ms. Caruso crying out in pain and yelling to staff that they were hurting her.  Ms. Littlefield will testify that she heard a male staff say that he did not believe Ms. Caruso and that he did not care about her medical issues."  (ECF No. 224, pgs. 3-4).

### b.  Jennie Burgos

"Jennie Burgos both saw and heard the interactions between Ms. Caruso and ISU staff on July 22, 2013.  She was in the cell directly across from Ms. Caruso's cell at the time of the incident.  Ms. Burgos had a large window that faced the door of Ms. Caruso's cell and from there she could see directly into Ms. Caruso's cell during the incident because the door was open.  Ms. Burgos recognized the ISU officers present.  She saw them trying to get something from inside of Caruso's pants from behind.  Ms. Burgos saw Ms. Caruso's pants pulled down while at least one male staff was holding her down on the table.  Ms. Burgos also heard Ms. Caruso telling ISU staff to get off of her and that they were hurting her.  Ms. Burgos saw ISU staff throw Caruso into a wheelchair while she was handcuffed behind her back.  Ms. Burgos

will testify that she could see Ms. Caruso's face, which looked like she was in a lot of pain." (Id. at 4).

   c. <u>Meiko M. Leggett</u>

 "Meiko M. Leggett both saw and heard the interactions between Ms. Caruso and ISU staff on July 22, 2013.[]  On the date of the incident, Ms. Leggett was incarcerated at CCWF. Her cell was located next to Ms. Caruso's cell.  Ms. Leggett will testify that she recognized the ISU staff who entered Ms. Caruso's cell.  She witnessed them having problems opening the door.  She heard Ms. Caruso plead with Sergeant Ingram to cuff her in front because of her medical condition and tell him that the medical chrono was on her locker door.  She heard Sergeant Ingram speak to Ms. Caruso in a sarcastic tone that he could not see her medical chrono.  Ms. Leggett heard Ms. Caruso crying in pain and asking ISU staff to stop.  She heard CO Lopez and CO Solorio tell Sergeant Ingram that Caruso fell, and would not get back up and stand on her own.  Ms. Leggett heard Sergeant Ingram tell the other ISU staff to hold her down and Ms. Caruso begging them not to pull her pants down.  Ms. Leggett could see through the reflections in the window across the hall that there were a group of ISU staff holding Caruso down on the table, including two men.  She heard Ms. Caruso ask someone to pull her underwear and shorts back up on her and Sergeant Ingram order CO Lopez to pull her clothes up." (Id. at 4-5).

   d. <u>Shachie Day</u>

 "Shachie Day both saw and heard the interactions between Ms. Caruso and ISU staff on July 22, 2013.  At the time of the incident, Ms. Day was inside of her cell at CCWF, diagonally across the hallway from Ms. Caruso's cell.  She will testify that she was able to see into Ms. Caruso's cell by looking out the window of her cell and into the window of Ms. Caruso's cell. Ms. Day saw ISU staff, including a male officer, in the cell with Ms. Caruso while yelling at her to put her hands behind her back.  Ms. Day watched ISU staff handcuff Ms. Caruso behind her back and tug on her arms as if they were trying got [sic] keep her standing up.  Ms. Day heard Ms. Caruso tell ISU staff that she had a medical chrono.  She heard and saw Ms. Caruso scream out, in what appeared to be pain, as ISU staff held Ms. Caruso face-down over a table.

Ms. Day will testify that she could see that there was one female staff on one side of Ms. Caruso and two male staff on the other side of her.  She saw two men holding down Ms. Caruso while ISU staff moved their hands near Ms. Caruso's backside.  Ms. Day heard Ms. Caruso continue to scream, 'please… stop'.  At one point, she saw a female officer put her hands down Ms. Caruso's clothing while she was bent over the table." (Id. at 5).

e. Rene Gonzales

"Rene Gonzalez is an eyewitness to Ms. Caruso's physical and emotional state as she was transported by ISU staff across the C-yard.  Ms. Gonzalez will testify that she witnessed Ms. Caruso pass her in C-yard, being pushed in a wheelchair by CO Lopez and CO Solorio standing on the right side of the wheelchair.  Ms. Gonzalez witnessed Ms. Caruso tied to the wheelchair with a bed sheet, with her hands restrained behind her back. Ms. Gonzalez saw CO Solorio pulling Ms. Caruso's hands above the arm rail as CO Lopez pushed the wheelchair. She saw Ms. Caruso was bent over in half and her body looked contorted.  Ms. Gonzalez will testify that Ms. Caruso's face looked strained, like she was in a lot of pain." (Id.).

f. Stephanie Ogilvie

"Stephanie Ogilvie was in C-yard when she saw and spoke to Ms. Caruso as she was being transported by ISU staff.  Ms. Ogilvie was ten feet away from Ms. Caruso when she saw her taped up and restrained to a wheelchair, with her hands behind her back.  Ms. Ogilvie had a brief conversation with Ms. Caruso, during which she saw and heard from Ms. Caruso that she was suffering from intense pain, was emotionally traumatized, and described what ISU did to her at her cell.  Ms. Ogilvie will testify as to which ISU staff was transporting Ms. Caruso, the inhumane way in which she was transported by ISU staff, and Ms. Caruso's physical and emotional state at the time she was transported." (Id. 6).

## III. DEFENDANTS' OPPOSITION

Defendants argue that Plaintiff's motion should be denied in its entirety.  "[T]he motion is defective and reveals that significant proposed witness testimony will be based on inadmissible hearsay.  In addition to hearsay issues, the motion should be denied for the following reasons.  First, prospective witness Stephanie Ogilvie's testimony goes well beyond

what has been identified in Plaintiff's initial disclosures.  Second, prospective witness Rene Gonzalez has not been identified in Plaintiff's initial disclosures, nor was she identified as a potential witness during Plaintiff's deposition or in supplemental disclosures.  Third, inmate Meiko Leggett's testimony is largely cumulative of Plaintiff's and Shachie Day's perceptions, rendering the testimony of Leggett a waste of time and resources.  Fourth, the proposed testimony of inmate Jennie Burgos is cumulative of the testimony to be offered by inmate Gigi Littlefield." (ECF No. 229, pgs. 1-2) (footnote omitted).

Defendants also argue that certain testimony from the prospective witnesses would be cumulative or not relevant.

Defendants also argue that producing inmates Gonzalez, Day, and Legget, who have limited knowledge and whose institution of confinement is more than 250 miles from Fresno, is not cost effective.

Finally, Defendants argue that the California Department of Corrections and Rehabilitation should not be required to produce witnesses whose testimony constitutes inadmissible hearsay.

## IV.   DISCUSSION

"The determination whether to issue a writ of habeas corpus ad testificandum rests within the sound discretion of the district court." Cummings v. Adams, 2006 U.S. Dist. LEXIS 9381, *6, 2006 WL 449095 (E.D. Cal. Feb. 17, 2006).  Accord Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994).

In determining whether to grant Plaintiff's motions for the attendance of incarcerated witnesses, the Court considers the following factors: (1) whether the inmate's presence will substantially further the resolution of the case, (2) the security risks presented by the inmate's presence, (3) the expense of transportation and security, and (4) whether the suit can be stayed until the inmate is released without prejudice to the cause asserted.  Wiggins v. County of Alameda, 717 F.2d 466, 468 n.1 (9th Cir. 1983).  See also Lopez v. Cate, 2016 WL 3940341, at *2 (E.D. Cal. July 20, 2016).

After conducting a "cost-benefit analysis regarding whether the inmate[s] should come

to court," Cummings, 2006 U.S. Dist. LEXIS 9381 at *7, the Court has determined that all six witnesses should to come to court to testify.

Defendants objections are overruled.  Many of Defendants' objections do not directly address the factors above, and should be brought as motions *in limine* or as objections to testimony at trial.  For example, Defendants argue that Plaintiff should not be allowed to call Ms. Gonzalez as a witness because Plaintiff failed to timely identify her as a witness, that Plaintiff should not be allowed to call Ms. Ogilvie because her testimony goes beyond that which was identified by Plaintiff in her initial disclosures, and that certain witnesses should be excluded because their testimony would be cumulative.  However, for purposes of this motion, the Court is only considering the four factors identified above.  And, after balancing the factors, the Court finds that all six witnesses should be brought to Court to testify.  While the Court will order that these witnesses be brought to Court to testify based on the legal standards above, the Court notes that nothing in this order prevents Defendants from filing motions *in limine* to exclude testimony or witnesses, which will be heard by the assigned district judge.

Plaintiff has shown that the testimony of each witness will substantially further the resolution of this case.  Each witness is an earwitness, eyewitness, or both, to events that are relevant to Plaintiff's case and that appear to be in dispute.[1]  There is no indication that transportation of any of the prospective witness presents a security risk, and neither party has argued that the case should be stayed until the proposed inmate witnesses are released. Moreover, given the age of this case, staying the case would be prejudicial.

Defendants do argue that transporting inmates Gonzalez, Day, and Legget is not cost effective, but Defendants have not presented any evidence regarding the cost of transporting these inmates.  Moreover, Defendants do not address Plaintiff's alternative request to allow the witnesses to appear by video conference, which would likely reduce the cost.[2]

---

[1] To the extent Defendants believe that the scope of the proposed testimony exceeds the scope of the claims proceeding in this case, Defendants should file a motion *in limine* regarding the issue.

[2] As Defendants did not address Plaintiff's alternative request, the Court will order the parties to meet and confer about whether any or all of the witnesses identified in the motion can appear by video.  If there is agreement about any witnesses, the parties shall file that agreement no later than May 8, 2020, in which case the

In ruling on this motion, the Court is not making any evidentiary rulings. The Court is only conducting a cost-benefit analysis to determine whether these witnesses should be brought to court. Thus, while Defendants objections to this motion are overruled, nothing in this order prevents Defendants from filing motions *in limine* to exclude testimony or witnesses, or from objecting to testimony at the trial.

## V.   ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion for attendance of incarcerated witnesses is GRANTED.

Absent further order of the Court, approximately one month before the trial the Court will issue writs of habeas corpus ad testificandum to have the following inmates brought to the court to testify at trial: 1) Gigi Littlefield, CDCR #X27638; 2) Jennie Burgos, CDCR #W95185; 3) Meiko M. Leggett, CDCR #W93882; 4) Shachie Day, CDCR #W84764; 5) Rene Gonzalez, CDCR #W98673; and 6) Stephanie Ogilvie, CDCR #X26245.

IT IS FURTHER ORDERED that the parties shall meet and confer about whether any or all of the witnesses identified in the motion can appear by video. If there is agreement about any witnesses, the parties shall file that agreement no later than May 8, 2020, in which case the Court will issue a writ for a video conference appear for those witnesses. If the parties do not file a notice by this date, the Court will issue writs for in-person testimony for all six witnesses.

IT IS SO ORDERED.

Dated:   **April 21, 2020**        /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE

Court will issue a writ for a video conference appear for those witnesses. If the parties do not file a notice by this date, the Court will issue writs for in-person testimony for all six witnesses.