UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARUSO,<br><br>Plaintiff<br><br>v.<br><br>OFFICER G. SOLORIO, OFFICER C. LOPEZ, SGT. G. INGRAM, and OFFICER D. MARTINEZ,<br><br>Defendants | CASE NO. 1:15-CV-780 AWI EPG<br><br>ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION<br><br>(Doc. No. 214) |

This case arises out of an encounter between incarcerated Plaintiff Gina Caruso ("Caruso") and Defendant prison guards G. Solorio ("Solorio"), C. Lopez ("Lopez"), G. Ingram ("Ingram"), and D. Martinez ("Martinez") (collectively "Defendants"). Currently pending before the Court is Defendants' motion for reconsideration of a discovery sanctions order issued against them by the Magistrate Judge. For the reasons that follow, reconsideration will be denied.

*Reconsideration Standard*

A district court may refer pretrial issues to a magistrate judge to either hear and decide or issue findings and recommendations. See 28 U.S.C. § 636(b)(1); Khrapunov v. Prosyankin, 931 F.3d 922, 930-31 (9th Cir. 2019); Bhan v.NME Hosps., Inc., 929 F.2d 1404, 1414 (9th Cir. 1991). If a party objects to a non-dispositive pretrial ruling by a magistrate judge, the district court will review or reconsider the ruling under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 626(b)(1)(A); Fed. R. Civ. P. 72(a); Khrapunov, 931 F.3d at 931; Grimes v. City of San Francisco, 951 F.2d 236, 240-41 (9th Cir. 1991). A magistrate judge's factual findings or

discretionary decisions are "clearly erroneous" when the district court is left with the definite and firm conviction that a mistake has been committed. Security Farms v. International Bhd. of Teamsters, 124 F.3d 999, 1014 (9th Cir. 1997); Avalos v. Foster Poultry Farms, 798 F.Supp.2d 1156, 1160 (E.D. Cal. 2011). This standard is significantly deferential. Security Farms, 124 F.3d at 1014; Avalos, 798 F.Supp.2d at 1160. The district court "may not simply substitute its judgment for that of the deciding court." Grimes, 951 F.2d at 241; Avalos, 798 F.Supp.2d at 1160. The "contrary to law" standard allows independent, plenary review of purely legal determinations by the magistrate judge. See PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (5th Cir. 2010); Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir.1992); Avalos, 798 F.Supp.2d at 1160; Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1110-11 (E.D. Cal. 2011). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Calderon v. Experian Info. Solutions, Inc., 290 F.R.D. 508, 511 (D. Idaho 2013); Jadwin, 767 F.Supp.2d at 1111.

*Magistrate Judge's Order*

On November 26, 2019, the Magistrate Judge issued an order ("the Sanctions Order") that resolved a discovery sanctions motion filed by Caruso. Se Doc. No. 212. The sanctions motion sought sanctions against Defendants for failure to comply with a May 1, 2018 order that compelled Defendants to produce original copies of the incident report at issue in the case. See id. at p.1. The Sanctions Order outlined prior discovery hearings, prior motions regarding the production of investigative reports, the production of an amended incident report, the discovery and production of a draft incident report, and the repeated representations by defense counsel that diligent searches had been conducted and that no other versions of the incident report exist. See id. at pp. 2-10. The Sanctions Order expressly made the following findings of fact: (1) Defendants initially produced only the final report in discovery, despite multiple motions to compel; (2) defense counsel repeatedly represented that no other versions of that report existed, and that a thorough search had been completed; (3) after repeated motions to compel and court orders, and after Plaintiff requested an informal conference on the current motion for sanctions, Defendants provided an earlier version of the incident report; (4) Plaintiff still maintains that an

1  additional version or versions of the report existed at one time; and (5) defense counsel has now
2  assured the Court and parties that no earlier versions exist at this time.  See id. at pp. 11-12.  The
3  Sanctions Order concluded that all remaining versions of the incident had likely been produced,
4  prejudice to Caruso was somewhat lessened in that the amended incident report purports to
5  identify the changes made to the prior version of the report, and there was insufficient evidence to
6  sanction Defendants for spoliation.  See id. at pp. 12-13.  However, these findings did not address
7  Defendants' failure to provide the draft incident report until February 28, 2019, despite multiple
8  discovery requests and orders dating back to December 26, 2017.  See id. at 13.

9        The Sanctions Order explained that Defendant Ingram located the draft report in July 2018,
10 about six months before the draft report was actually produced.  See id. at pp. 13-14.[1]  The
11 Sanctions Order quoted from the deposition of Ingram, in which he explained that in July 2018, he
12 reviewed an archive of the DERS system and found both an original/draft and an amended
13 incident report.  See id. at p.14.  Ingram testified that he was searching in the DERS archive
14 because he understood that the prison litigation coordinator needed the original incident report.
15 See id.  When Ingram found the original/draft incident report, he offered to print a copy of it, but
16 the litigation coordinator said that she already had it and did not need it any longer.  See id.  The
17 Sanctions Order then made the following conclusions:

> The testimony reveals that Defendant [Ingram] had a copy of the earlier incident
> report around July of 2018, yet failed to provide it in discovery until February of
> 2019.  Moreover, Defendant [Ingram] was able to retrieve the document by looking
> on an archive, and the Litigation Coordinator also found the document by July
> 2018 form yet another source.  This information indicates that a reasonable search
> would have located this document.
>
> The Court finds that this failure to produce discovery, whether due to a failure to
> conduct a reasonable search originally or due to a miscommunication, substantially
> contributed to Plaintiff's need to file a motion for sanctions.  Although the missing
> document was produced before a formal motion for sanctions was filed, it was
> produced after repeated false representations to Plaintiff and the Court, and this
> contributed to a severe distrust in Defendants' representations on this issue.
> Plaintiff and her counsel had been arguing that an earlier version of the expert
> report exited for years, and had been completely stonewalled in their attempt to find
> the missing report.  Then, at Defendant [Ingram's] deposition, Plaintiff's counsel
> learned for the first time that an original report indeed existed and had been located
> many months before.  It was reasonable for Plaintiff to file the current motion to

---

[1] The Sanctions Order erroneously indicates that Lt. Villegas found the earlier report.  However, the Sanctions Order actually quotes from Defendant Ingram's deposition and it was clearly Ingram who found the draft version in 2018.

compel and for sanctions.

Id. at pp. 14-15. The Sanctions Order then imposed sanctions in the form of costs and expenses, including attorneys' fees, associated with filing and arguing the motion for sanctions, but not for previous attempts to secure production of the original report. See id. p.15. The sanctions were awarded under the authority of Federal Rule of Civil Procedure 37(b)(2)(C). See id. The Sanctions Order required the parties to meet and confer regarding the costs and expenses. See id.

*Defendants' Argument*

Defendants argue that they were sanctioned for failing to disclose the draft incident report prior to a court ordered May 15, 2018 deadline. However, there is no evidence that demonstrates that Defendants were in possession of the contested report prior to the May 2018 deadline. The evidence shows that defense counsel initiated a reasonable search and continued to follow up with two litigation coordinators, the Defendants, Caruso, and staff members at Central California Women's Facility. Defense counsel explains the actions he took and the responses he received in searching for various versions of the incident report, and the results of those searches and information received informed and supported his representations to the Court. Despite Ingram's testimony that the initial litigation coordinator possessed the draft incident report in July 2018, no report was produced to defense counsel despite multiple requests. Even if the Court were inclined to find negligence or recklessness, that is not a sufficient basis for sanctions. There is no indication or finding that Defendants or defense counsel acted willfully or in bad faith, and a determination that defense counsel did not initiate a reasonable search is clearly erroneous. Further, there is insufficient evidence of prejudice. As recognized in the Sanctions Order, the amended incident report details the changes made to the prior report and thus, reduces prejudice to Caruso. There is no evidence that the information contained in the amended incident report is inaccurate or has prejudiced the litigation. Further, the draft report played no role in summary judgment and has not been used in the litigation since its disclosure in February 2019. Moreover, Rule 26(e) imposes a continuous duty to supplement discovery, and the draft report was provided to counsel four months prior to any sanctions motion being filed. There has been no prejudice to Caruso and Defendants should not have to pay sanctions for a motion that was needlessly brought.

1  Finally, even if sanctions were somehow appropriate, the Sanctions Order ordered the parties to
2  meet and confer regarding the measure of sanctions.  However, it should be Caruso's burden to
3  produce billing records for each relevant expense.  Defendants have no indication of what
4  counsel's hourly rate is or any way to challenge or rebut records, should they be formally
5  produced.  The meet and confer order was clearly erroneous.

6  *Plaintiff's Response*

7  Caruso argues that Defendants' objections to the Sanctions Order's finding of an
8  unreasonable search does not demonstrate clear error and merely repeats arguments that were
9  previously rejected by the Magistrate Judge.  The Sanctions Order's finding is supported by the
10 record.  The most logical place to search for the original incident reports was in the incident
11 binders shelved in the ISU offices, were three Defendants worked from 2017 to 2019 and where
12 Defendant Lopez continues to work in the ISU offices.  The Defendants are silent about efforts to
13 search the ISU offices.  Moreover, Defendant Ingram had the draft incident report in July 2018,
14 but the report was not produced until 2019.  At a minimum, the evidence shows that Defendants
15 were negligent in failing to locate the original incident reports in the ISU offices, failing to timely
16 produce the earlier version of the incident report obtained by Ingram in in July 2018, and failing to
17 search numerous other locations where the original incident  report could be found (including the
18 ISU offices, the files of the custody captain, the Warden and Associate Warden's files, the files of
19 the Use of Force Committee, and the files of the Use of Force Coordinator).  Defendants seek to
20 minimize the extent of their discovery violation by focusing on their failure to produce the draft
21 report prior to May 15, 2018.  However, the Sanctions Order detailed the chronology of the
22 various discovery disputes and orders compelling Defendants to produce earlier versions of the
23 incident report, including the false representation that an exhaustive search had occurred.  The
24 record shows that Defendants' discovery violations spanned two years.  Finally, while defense
25 counsel argues that he was diligent in producing the draft incident report in February 2019, the
26 Sanctions Order imposed sanctions against Defendants, not defense counsel.

27 Caruso also argues that Defendants' prejudice argument is flawed.  The original signed
28 incident reports have not been produced and have likely been purged.  The fact that her initial

5

1  motions did not result in production of the original report should not be used against her.
2  Defendants' argument would also have a detrimental effect on *pro se* litigation. Defendants'
3  failure to comply with various orders to produce earlier drafts of the incident report caused Caruso
4  to litigate exhaustively litigate the issue pro se without success. As a result of Caruso litigating
5  her case, she was subject to a retaliatory transfer to a different prison. The record demonstrates
6  that the earlier draft would not have been produced but for the vigorous efforts of Caruso acting
7  pro se and the efforts of her attorney and that significant legal and that it was only after extensive
8  judicial resources were expended that Defendants finally complied.

9  Finally, Caruso argues that the meet and confer order was not clearly erroneous. Details
10 regarding attorneys' fees and costs incurred will be forthcoming upon completion of Defendants'
11 ongoing challenge to the sanctions order.

12 *Discussion*

13 As the Court reads the Sanctions Order, the basis for sanctions was the apparent failure of
14 Defendants or those working on the Defendants' behalf (such as litigation coordinators) to conduct
15 a reasonable and thorough search, which resulted in multiple motions, hearings, and orders
16 regarding "earlier versions" of the incident report. The Sanctions Order concluded that a
17 reasonable search had not been conducted because Ingram had discovered the draft incident report
18 by looking through a DERS archive in July 2018, and a litigation coordinator had found the draft
19 incident report prior to Ingram (per Ingram's deposition). The Sanctions Order further concluded
20 that there was not a sufficient explanation as to why the draft version had not been found prior to
21 July 2018 and not produced prior to February 2019, and that the representations prior to February
22 2019 that no other versions of the report existed was literally false. The Sanctions Order found
23 that the failure to conduct a reasonable search and produce the draft report prior to February 2019
24 caused the filing of multipole motions. On this basis, the Magistrate Judge ordered sanctions.

25 After considering the arguments of Defendants, the Court does not find any of the above
26 findings in the Sanctions Order to be clearly erroneous. Contrary to Defendants' argument, the
27 fact that Ingram discovered the draft version in July 2018 and that the litigation coordinator had
28 obtained it prior to Ingram does support a finding that the draft version was in existence and

1  discoverable between December 2017 and July 2018.  The draft version of the incident report was
2  generated in 2013.  As an archived document, there is nothing to suggest that the 2013 draft would
3  not have been in the DERS archive between December 2017 and July 2018.  Given the nature of
4  archives in general, it is likely that the draft report would have been archived in DERS shortly
5  after the amended report became the final report, but definitely before December 2017.  Further, it
6  is unknown why the DERS archive (or other possible locations) was not searched prior to July
7  2018.  Despite representations that Defendants did not have access to the DERS archive for events
8  dating back to 2013, Ingram's deposition testimony clearly shows this is not true.  As for the
9  litigation coordinator obtaining the draft version prior to Ingram, it is unknown how she obtained
10 the draft version, when she obtained the draft version, why she did not cause someone who
11 indisputably had full DERS access to search prior to July 2018, or why she did not turn the draft
12 over to defense counsel in or prior to July 2018.  In any event, the fact that the draft version was
13 discovered twice around July 2018 by two separate individuals indicates that it could have been
14 discovered and produced much earlier than February 2019.

15         Defendants outline the efforts that defense counsel made to find earlier versions of the
16 incident report.  The Court agrees that the defense counsel was diligent and was clearly attempting
17 to locate other versions.  Defense counsel can only ask Defendants and those working on
18 Defendants' behalf to search for responsive documents. This was implicitly recognized by the
19 Sanctions Order as well.  The focus of the Sanctions Order was on "Defendants," not defense
20 counsel.  Because it is Defendants who were sanctioned, not defense counsel, the efforts of
21 defense counsel alone do not warrant reconsidering the Sanctions Order.

22         Defendants also contend that there was little prejudice to Caruso.  However, the Court
23 agrees with both Caruso and the Sanctions Order.  The failure to conduct a reasonable and
24 thorough search and to produce the draft incident report prior to February 2019 led Caruso to
25 reasonably continue efforts to try to find additional versions of the incident report and also led to
26 the continued expenditure of valuable judicial resources.  That expenditure continues to this day.
27 It remains a mystery why Defendants or those working on Defendants' behalf could not have
28 found and disclosed the draft incident report at anytime between December 2017 and July 2018.

If they had done so, the sanctions motion would likely not have been filed and this order would never issue. The expenditure of judicial resources and the expenditure of Caruso's and her counsel's resources towards obtaining something that was incorrectly represented as non-existent and that should have been disclosed months before February 2019 is prejudicial. Moreover, given the sequence of events and discovery orders that had issued, it is not clear that the draft report would have been timely disclosed under Rule 26(e) in the absence of Caruso's various discovery motions.

Defendants also argue that the Sanctions Order made no finding of bad faith or willfulness. That is true and likely part of the reason that the Sanctions Order did not find that spoliation had occurred. However, the absence of a finding of bad faith or willfulness is irrelevant. The Ninth Circuit has recognized that a discovery sanction can be based on negligent conduct. See Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1343 (9th Cir. 1985). Defendants do not argue that there was no negligence in this matter, rather, they only argue that negligence cannot support discovery sanctions. That assertion is incorrect. See id.

Finally, the Court finds nothing improper about the Sanctions Order's meet and confer directive. The directive does not mean that Defendants must blindly accept any figures that Caruso's counsel discloses. The meet and confer order is simply an opportunity for the parties to negotiate and resolve the matter without the further judicial involvement, if possible. Of course, if no resolution can be amicably reached between the parties following meet and confer efforts, then Caruso may file a motion for her fees and Defendants may file an opposition.

The clearly erroneous standard is a highly deferential standard. See Avalos, 798 F.Supp.2d at 1160. This Court may not simply substitute its judgment for that of the Magistrate Judge. See id. The Magistrate Judge's discretionary decisions and findings of fact are clearly erroneous only if the Court is left with the definite and firm conviction that a mistake has been made. See id. Defendants arguments do not cause the Court to have that definite and firm conviction. Therefore, Defendants' motion for reconsideration will be denied.

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for reconsideration (Doc. No. 214) is DENIED.

IT IS SO ORDERED.

Dated:   November 25, 2020                    _____
                                              SENIOR DISTRICT JUDGE