1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                    **EASTERN DISTRICT OF CALIFORNIA**

8

9   **GINA CARUSO,**                          **CASE NO. 1:15-CV-780 AWI EPG (PC)**

10                     **Plaintiff**

11          **v.**                            **ORDER ON SUPPLEMENTAL
                                              MOTIONS IN LIMINE**

12   **OFFICER G. SOLORIO, OFFICER C.
     LOPEZ, SGT. G. INGRAM, and**             (Doc. Nos. 327, 329, 330, 331, 332)

13   **OFFICER D. MARTINEZ,**

14                     **Defendants**

15

16

17          This case arises out of an encounter between incarcerated Plaintiff Gina Caruso ("Caruso")

18   and Defendant prison guards G. Solorio ("Solorio"), C. Lopez ("Lopez"), D. Martinez

19   ("Martinez"), and Sgt. G. Ingram ("Ingram") (collectively "Defendants").[1]  The operative

20   complaint is the Second Amended Complaint ("SAC").  The SAC contains two viable claims

21   under 42 U.S.C. § 1983, an Eighth Amendment claim for excessive force and a Fourth

22   Amendment claim for an unreasonable search.  Currently before the Court are Caruso's four

23   supplemental motions in limine and Defendants' two supplemental motions in limine.  Hearing on

24   the motions was held on January 4, 2022, and the Court took all supplemental motions under

25   submission following the hearing.  This order now resolves the parties' respective supplemental

26   motions.

27
     ───────────────────────
28   [1] The parties are familiar with the facts of this case.  A thorough description of the facts can be found in the Court's
     order on Defendants' motion for summary judgment.  See Caruso v. Solorio, 2020 U.S. Dist. LEXIS 51994 (E.D. Cal.
     Mar. 25, 2020).

**I.      PLAINTIFF'S SUPPLEMENTAL MOTIONS**

1.      Supplemental Motion in Limine No.1/Motion in Limine No. 7 -- Exclude Evidence of Plaintiff's Disciplinary Violation for Drug Distribution Arising from the July 2013 Incident (Doc. No. 329)

*Plaintiff's Argument*

Caruso argues that her drug distribution disciplinary violation should be excluded under Federal Rules of Evidence 402, 403, and 404.  The disciplinary violation is irrelevant because it does not offer any probative value on either of the two existing claims.  Any intention that she may have had with respect to the drug bindles has no relevance to the claims that the jury will decide.  While the Court has ruled that Defendants can testify about what they knew about Caruso prior to the July 2013 incident, there is no indication that Defendants' actions were impacted by whether Caruso intended to use the drugs for personal use or for distribution.  Moreover, the drug distribution disciplinary violation does not bear on a permitted Rule 404 purpose.  Instead, the evidence is being offered only to show that Caruso is a bad person.  Evidence of the disciplinary violation is highly prejudicial and that prejudice substantially outweighs any relevance as it would likely bias the jury against her.  Moreover, the jury will already be informed that as a result of the July 2013 incident, Caruso pled guilty in state court to possession of narcotics in violation of Cal. Health & Safety Code § 11377(a), and the jury will already know that she has been in jail for the last 7 years, meaning they will know she is a felon.  Any additional evidence would be needlessly cumulative.

*Defendants' Opposition*

Defendants argue that Caruso pled guilty to both a rules violation in prison and to a criminal charge in superior court.  The guilty plea to the rules violation is relevant to Caruso's credibility and motive, which is distinguishable from the Court's earlier exclusion of Caruso's old felony and misdemeanor convictions.  The bindles recovered from Caruso had notes to various inmates and were packaged for distribution.  Caruso had more of an incentive to try to prevent these bindles from being discovered, not just because she had drug debts to repay, but also because a rules violation for distribution caries a heavier punishment (loss of 151-190 days of credit forfeiture, compared to 91 to 120 days forfeiture for mere possession).  Caruso was non-

compliant with the search because of her intent to distribute narcotics, which caused Defendants to change their response. Her disobedience to orders created an emergent condition which did not give the Defendants time to confirm the cuff-in-front chrono and ultimately to perform a pat-down search. Defendants argue that they are not using a prior incident to prove Caruso acted in accordance with her past behavior. Here guilty plea for distribution goes directly to motive, opportunity, intent, preparation, and plan for that day. Further, Caruso herself identified the rules violation in her exhibit list, which shows that she intends to present the evidence at trial.

*Discussion*

The parties have already agreed via stipulation and have language regarding the admissibility of Caruso's state law criminal conviction for possession of narcotics. The dispute between the parties has to do with the admissibility of evidence surrounding a prison rules violation/disciplinary write-up for drug distribution. The rules violation does not appear to have relevance to Caruso's two causes of action. Caruso has never denied that she had several drug bindles (bound in one bundle), the jury will hear she pled guilty to possession in state court, and the jury will hear that drug bindles were found during the strip search. To hear that she was disciplined for drug distribution does add an additional danger of prejudice/bias against Caruso because drug dealing has a greater societal stigma than drug possession.

Defendants wish to admit the rules violation in order to explain Caruso's actions and classify them as resistive. That Court agrees that Caruso may have had a motive to resist discovery of the drug bindles if she knew that she would lose significant amounts of good time credit. However, Defendants do not cite any evidence that Caruso knew either that she would lose good time credit or the amount of good time credit that could be lost. Moreover, Caruso was already in custody by the Defendants and they were going to search her. Discovery of the drug bindles was inevitable and likely to occur quickly because Lopez saw Caruso put the drug bindles in Caruso's underwear/buttocks and the drug bindles were between Caruso's buttocks, not in her anal cavity. Given the situation that was actually occurring, which meant inevitable discovery, as well as the absence of any evidence that Caruso knew she could lose around six months of credit for distribution of drugs, the Court finds that the limited probative value that the rules violation

may have is substantially outweighed by the danger of unfair prejudice that naturally flows from the jury being informed that Caruso received and pled guilty to a drug distribution rules violation.

*Ruling*

Caruso's first supplemental motion in limine is granted pursuant to Fed. R. Evid. 403, and evidence concerning the July 2013 rules violation for drug distribution is excluded.

> **2.**   Supplemental Motion in Limine No. 2/Motion in Limine No. 8 – Exclude Disciplinary History or Questioning About Drug Activity By Prisoner Witnesses (Doc. No. 330)

*Plaintiff's Argument*

Caruso argues that evidence of prior drug activity by her prisoner witnesses should be excluded for the same reasons that the Court excluded evidence of prior drug trafficking activities by her. Such evidence has very little, if any, probative value on the two claims left in this case. What little probative value that may exist is outweighed by the highly prejudicial impact it will have on the jury. To the extent that Defendants seek to cross-examine the prisoner witnesses about bias or undue influence, they can simply ask whether the witnesses were promised anything in exchange for their testimony. Moreover, should Defendants question any prisoner witnesses about their prior drug activity, those witnesses will be required to invoke the Fifth Amendment privilege against self-incrimination because the questions may call for the possible admission of drug use or activity that could serve as the basis for possible criminal prosecution. This could have devastating consequences, particularly to those who are programming or who have up-coming hearings. The mere assertion of the Fifth Amendment privilege could cause the jury to have an adverse view of the witnesses.

*Defendants' Opposition*

Defendants argue that this motion in limine is covered by Plaintiff's prior motion in limine No. 3. The Court ruled that without specific instances of discipline, no ruling can be made as to inmate witnesses. The Court thus deferred ruling. Once again, Caruso provides no specific instances of disciplinary history and only broadly argues that drug-related evidence would be unduly prejudicial under Rule 403. Defendants argue that they should not be prevented from

providing evidence to help the jury make necessary credibility determinations to the extent permissible under Federal Rules of Evidence 404, 607, 608, and/or 609.  Defendants must be given the opportunity to explore the issue of bias beyond merely asking if the witnesses were promised anything for their testimony.

*Discussion*

Caruso's prior motion in limine No. 3 sought to exclude the criminal and disciplinary histories of herself and her inmate witnesses.  As to the inmate witnesses, because Caruso identified no specific instances of disciplinary or criminal history, the Court held that no rulings could be made and thus, deferred the issue.  That continues to be the case with respect to disciplinary violations and criminal histories.  There may be sufficient relevance and an appropriate evidentiary rule that would make prior disciplinary violations (for example if a witness was written up by one of the Defendants) or criminal convictions (for example, a non-stale felony) admissible.  Until a particular inmate's criminal conviction and disciplinary history is disclosed, the Court will continue to defer ruling on this matter.[2]

With respect to concerns about Defendants questioning the inmate witnesses about the witness's own drug activity in prison, such blanket questions are not probative of the claims being made by Caruso, and past drug activity in general is not necessarily inherently probative of either credibility or bias.  Further, a general question about drug activity could capture instances in which the witness was not prosecuted or did not admit the underlying conduct, thereby raising potential Fifth Amendment concerns.[3]  Finally, there is a clear Fed. R. of Evid. 403 concern in terms of undue prejudice and bias against the witnesses and Caruso from the inmate witnesses discussing their drug activity.  Therefore, general questions about drug activity by the inmate witnesses, as opposed to asking about convictions or disciplinary violations, will be excluded.

*Ruling*

Rulings on an inmate witness's criminal convictions and prison rules violations are

---

[2] The Court notes that at the January 4, 2022 hearing, Plaintiff's counsel agreed that deferral was appropriate.

[3] To the extent that a conviction or disciplinary violation is final, but the witness never admitted to the underlying conduct, and to the extent such a violation or conviction is otherwise admissible, questions can be limited to asking about a conviction or a rules violation without asking whether the inmate actually committed the underlying conduct.

reserved until trial and the particular conviction or violation is disclosed to the Court.  This supplemental motion is granted with respect to questions about general drug trafficking or drug possession activity by inmate witnesses, and such questions are excluded.

      3.      <u>Supplemental Motion in Limine No. 3/Motion in Limine No. 9 – Exclude Evidence of Plaintiff's Reputation (Doc. No. 331)</u>

*Plaintiff's Argument*

Caruso argues that she expects Defendants to admit evidence about her reputation for drug trafficking.  For example, Defendant Lopez testified that Plaintiff was known among prisoners as the "Godmother" because of her reputation for selling drugs.  Ingram also testified that he heard that Caruso was involved in drug trafficking.  This reputational evidence should be excluded for the same reasons that the Court excluded evidence of prior drug trafficking activities.  Such evidence has very little probative value to the two remaining claims.  Lopez and Ingram's knowledge of Caruso's reputation is based on her prior drug trafficking activities, and her prior drug trafficking activities were excluded as part of the Court ruling on Plaintiff's motion in limine No. 6.  Moreover, reputational evidence regarding Caruso's drug trafficking activity is inadmissible hearsay.  Reputational evidence of Caruso as a drug trafficker is not appropriate character evidence because it relates to her skills as a drug trafficker, not a human quality or trait.

*Defendants' Opposition*

Defendants argue that this motion is repetitive of Plaintiff's motion in limine No. 6.  Any knowledge of Caruso's drug trafficking prior to the July 2013 incident serves as the basis for Defendants' actions that day.  Lopez testified that Caruso was under investigation and suspected of possessing narcotics, that a tip was received that Caruso had contraband, and that Caruso was on a list of inmates being monitored for suspected drug activity.  Defendants state that they will limit their testimony in accordance with the Court order on Plaintiff's motion in limine No. 6.  This necessarily includes Caruso's reputation for drug trafficking prior to July 2013.  Other witnesses will not be asked about her reputation as a drug dealer unless Caruso opens the door.  This evidence will not be presented as character or hearsay evidence, but only presented to show what Defendants' knew, why they searched Caruso's cell, and why they acted on the tip.

1    *Discussion*

2          In Caruso's motion in limine No. 6, the Court excluded evidence regarding Caruso's prior

3    prison drug trafficking activity, but did permit Defendants to testify about any information

4    concerning Caruso in their possession prior to the July 22, 2013 search.  That ruling is not being

5    challenged.  What Caruso has specifically identified as a concern is testimony by Ingram and

6    Lopez.  The Court views Ingram and Lopez's testimony as falling within the parameters set by its

7    ruling on motion in limine No. 6.  Testimony about what Lopez and Ingram knew about Caruso,

8    including reputational information, would affect how the officers treated Caruso and viewed

9    Caruso's actions, and why the officers acted on the tip and searched the cell.  That is, it is

10   information in the defendants' possession that explains their actions.  Lopez and Ingram's

11   reputational knowledge of Caruso would not be offered for the truth of the matter asserted and

12   could be the subject of an appropriate limiting instruction.[4]  However, the nature of the

13   reputational testimony does not need to be extensive or detailed.  In particular, there is no need for

14   Lopez to testify that she understood Caruso to be known as "the Godmother."  It is one thing for

15   two Defendants to testify that they believed that Caruso had a reputation for drug dealing; it is

16   another to call her "the Godmother."  Such explicit testimony crosses the line set by Fed. R. of

17   Evid. 403 and would be unduly prejudicial.

18          With respect to questions of witnesses other than the Defendants about Caruso's reputation

19   for drug dealing, there are obvious Rule 403 concerns of undue bias and prejudice.  Moreover,

20   Defendants have stated that the do not intend to ask such questions (so long as Caruso does not

21   open the door).  Given Defendants' representations and the Rule 403 concerns, questions to non-

22   Defendant witnesses regarding Caruso's reputation for drug dealing will be excluded.

23   *Ruling*

24          This supplemental motion is denied with respect to testimony by Lopez and Ingram that,

25   generally, they were aware that Caruso had a reputation for drug dealing in prison.  However, this

26   ───────────────

27   [4] The following limiting instruction may be appropriate:  "You are to consider the testimony about Caruso's reputation only for the limited purposes of explaining what information the officers had about Caruso and how that information may have affected the officers' conduct that day."  The parties are free to stipulate to a different limiting instruction or

28   propose their own separate instruction.  However, the parties must first meet and confer in order to attempt to submit a stipulated limiting instruction.

supplemental motion is granted in that details regarding Caruso's reputation is unnecessary and excluded, including but not limited to testimony that Caruso was known as "the Godmother." This supplemental motion is also granted with respect to questions of non-Defendant witnesses regarding Caruso's reputation for drug dealing.

4. <u>Supplemental Motion in Limine No. 4/Motion in Limine No. 10 – Exclude Evidence of Prior Rulings Regarding the Cell Phone Search (Doc. No. 332)</u>

*Plaintiff's Argument*

Caruso argues that, similar to prior rulings, the Court should preclude the parties from making arguments about the dismissed Fourth Amendment cell phone search claim and any evidence that is relevant only to that dismissed claim. Caruso argues that certain details about the search are relevant to the remaining Fourth Amendment search claim. The timing of when the cell phone was retrieved is disputed and relevant to the parties' credibility. Solorio claims that she removed the phone after the drugs were removed from Caruso's possession, but in actuality, Lopez removed the phone before Caruso's clothing was removed and the drug bindle detected.

*Defendants' Opposition*

Defendants argue that the Court has already addressed this issue in Defendants' motion in limine No. 2. Defendants agree that any evidence about a claim being brought and dismissed, as well as evidence that is related only to that dismissed claim, should be excluded. Defendants argue that, contrary to Caruso's motion, Caruso does not explain how evidence about the search that yielded the cell phone is relevant to her existing Fourth Amendment claim. Both officers contend that Solorio retrieved the cell phone after the drug bindle was recovered. Evidence regarding the cell phone search would only confuse the jury. Defendants contend that any evidence regarding the cell phone search should be excluded. However, if Caruso insists on presenting such evidence to the jury, Defendants must be permitted to clarify that the cell phone search has already been found to be reasonable and that they should not weigh any evidence surrounding the cell phone search; this can be accomplished through an instruction by the Court.

*Discussion*

The parties agree as to the substantive aspect of the motion. The jury should not be

1   informed about any claim that was dismissed or for which summary judgment was granted, and

2   any evidence whose only relevance relates to a "resolved claim" should be excluded.  The

3   proponent of any evidence that relates to a "resolved claim" must be prepared in the face of an

4   objection to explain what relevance the evidence has to claims or issues that have not been

5   resolved.  This is essentially the ruling with respect to Defendants' motion in limine No. 2, and the

6   Court detects no reason why that ruling should not apply.

7        In terms of the evidence surrounding the "cell phone search," i.e. the bodily search of

8   Caruso that yielded the cell phone, Defendants contend that all evidence of the cell phone search

9   excluded.  However, at this point, it appears to the Court that evidence relating to the cell phone

10  search is relevant to setting a timeframe, explaining what happened in the cell leading up to the

11  strip search at issue,[5] and describing any additional movement of the handcuffs/Caruso's cuffed

12  arms during that cell phone search that caused her pain.  It does not appear to the Court that great

13  detail would need to be provided regarding the cell phone search itself, although detail would be

14  appropriate to describe pain caused by moving the handcuffs/Caruso's cuffed arms.  To address

15  potential jury confusion regarding the cell phone search and Caruso's active Fourth Amendment

16  claim, a limiting instruction can be given.[6]

17        Other relevance is not apparent.  With respect to Caruso's argument that evidence is

18  relevant to assessing credibility, the Court does not detect sufficient probative value.  The parties

19  are asserting two diametrically opposed versions of events.  Defendants' version of the drug bindle

20  search is consistent with their version of the cell phone search in that, if a mere pat-down and non-

21  strip search retrieval of the drug bindle occurred, then retrieval of the phone after the drug bindle

22  was discovered is plausible because the drug bindle was secreted in Caruso's buttocks and the cell

23

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [5] This statement accepts Caruso's version of events, which has the cell phone search occurring before the drug bindle
    search.  Defendants version of events has the cell phone search occurring after the drug bindle search.

25

26  [6] The following limiting instruction may be appropriate:  "You are about to hear testimony concerning one search of
    Plaintiff Gina Caruso.  This particular search does not form the basis of Plaintiff's Fourth Amendment unreasonable
    search claim.  You are not to consider evidence concerning this particular search in determining whether Plaintiff's

27  Fourth Amendment rights were violated."  The parties are free to stipulate to a different limiting instruction or propose
    their own separate limiting instruction.  However, before submitting a separate limiting instruction, the parties must

28  first meet and confer in order to attempt to submit a stipulated instruction.

phone was secreted in the front of Caruso's underwear near (but not in) her vagina.  Conversely, Caruso's version of the drug bindle search is consistent with her version of the cell phone search. Because the cell phone was secreted in Caruso's underwear near her vaginal area, the cell phone search would have had to occurred before the drug bindle search, otherwise the cell phone would have fallen out on its own when Solorio pulled Caruso's pants down.  Ultimately, the jury will have to determine which version of the drug bindle search occurred, and there is nothing about one parties' version of the cell phone search that clearly undermines the other parties' version of events.

*Ruling*

This supplemental motion is granted in that the parties are not to inform the jury of any claims that were brought but resolved before trial, evidence that has relevance only to a dismissed claim is excluded, and the proponent of any evidence that appears to relate to a resolved claim must be prepared to explain relevance apart from the dismissed claim in the face of an objection. With respect to Caruso's request to admit evidence relating to the cell phone search, limited evidence may be presented that establishes a timeframe, describes Defendants' actions in the cell, and describes any pain or harm experienced during the search while Caruso was handcuffed.[7]


**II.      DEFENDANTS' SUPPLEMENTAL MIL's (Doc. No. 327)**

1.      Supplemental Motion No. 1 -- Preclude Evidence or Argument about the Reasonableness of the Search at Issue, Because Plaintiff's Fourth Amendment Claim is Limited to Alleged Cross-Gender Viewing

*Defendants' Arguments*

Defendants argue that Caruso herself has acknowledged that her claim is limited to the cross-gender viewing nature of the search.  In her deposition, she stated that she was challenging a cross-gender strip search.  However, Caruso's trial brief and opposition trial brief make it clear that Caruso intends to introduce evidence and argue generally about the reasonableness of the search at issue.  Consistent with Ninth Circuit precedent, Caruso should be limited to arguing whether she was strip searched, whether intimate areas of her body were exposed to men, whether

---

[7] Additional limited purposes may become apparent during the course of trial.

the exposure was not inadvertent, occasional, casual, and/or restricted; and that emergency circumstances did not justify the cross-gender strip-search.  In the screening process, the Magistrate Judge explained that it was the allegation that Defendants intentionally left Caruso's shorts down after the search was over that stated a claim.  Also, in denying summary judgment, the Court found that under Caruso's version of events Defendants had conducted an intrusive cross-gender strip search in the absence of an emergency.  Caruso should not be permitted to argue that there was no legitimate penological purpose for the search, nor should she be permitted to confuse the issues with general challenges to the reasonableness of the search.  Such arguments do not go the reasonableness of Caruso's remaining Fourth Amendment claim.

*Plaintiff's Opposition*

Caruso argues that she has repeatedly alleged in this case, through the SAC and disclosures, that she was subjected an illegal strip and cavity search that violated the Fourth Amendment.  Neither the Court nor the Magistrate Judge has ever ruled on the merits of the Fourth Amendment illegal cavity search claim, nor did the Court's summary judgment order limit the nature of the Fourth Amendment claim.  Further, the dismissal of the Eighth Amendment sexual assault claim did not address or limit evidence of the cavity search from being presented on the Fourth Amendment claim.  The Fourth Amendment does apply to the reasonableness of searches in prison.  For purposes of a body cavity search, the presence of medical personnel or medical training is relevant to analyzing whether the search was conduct in a reasonable manner.  Evidence of the cavity search is relevant to show the search went far beyond a pat-down search.  It is also relevant to analyzing the *Bell v. Wolfish* factors.  Finally, evidence regarding the cavity search is crucial to explaining Caruso's emotional injuries arising from the search and why it was so emotionally traumatizing for her.

*Discussion*

From the briefing and the arguments of the parties at the hearing, it is apparent to the Court that there is a dispute about what Fourth Amendment unreasonable search claims are actually at issue in this case.  Caruso appears to contend that she has two Fourth Amendment claims, one based on a strip search and one based on a cavity search.  Defendants contend that Caruso has one

Fourth Amendment unreasonable search claim based on a cross-gender strip search, for which

evidence of "reasonableness" is improper.  The Court is not satisfied with either party's position.

In the SAC, Caruso identifies "Claim 2" as "4th Amendment reasonable standard, abusive

cross gender strip search cavity search, conducted in . . . cell, illegal search & seizure, violation of

PRIA, unconstitutional search cross-gender."  SAC at Claim 2 (p.4).  The "supporting facts"

section of Claim 2 explains that Martinez held Caruso's right arm, Lopez held Caruso's left arm,

and Solorio looked in Caruso's shorts and underwear.  See id.  Ingram then instructed the officers

to move a table and push Caruso face down on the table, bending her over at the waist.  See id.

Ingram instructed the officers to hold Caruso down, while Ingram held Caruso's neck.  See id. &

10:2.  Solorio then removed Caruso's underwear leaving her buttocks and vaginal area fully

exposed.  See id. at 10:2-3.  Solorio then allegedly:

> . . . conducted a cavity search on me reaching into my butt and removing a small
> plastic bag.  The search was conducted in the middle of my 8-man room in view of
> everyone, it was a cross-gender strip search where 2 men Mr. G. Ingram (Sgt.) and
> Mr. D. Martinez (C/O) held me down with force against my will allowing an illegal
> cavity search to be performed on me by Mrs. G. Solorio (C/O) right in the middle
> of 8-man room by bending me over table face down holding me there with
> excessive force in order to conduct illegal cavity search on my person.

Id. at 4-10.  After the bindle was retrieved, Caruso was stood up and was going to be taken to the

ISU office.  Caruso alleged that she was left standing naked from the waist down and she "asked

to please pull up my underwear and shorts several times before Mr. G. Ingram instructed Mrs. C.

Lopez (C/O) to pull my shorts up . . . ."  Id. at 14-16.

In the Magistrate Judge's screening order of the SAC, the relevant facts were summarized

as:

> Plaintiff alleges that she was strip-searched in view of other prisoners and male
> correctional officers. . . .  Plaintiff alleges that . . . she was left standing naked from
> the waist down.  She asked several times for someone to pull her shorts up.
> Eventually defendant Ingram instructed defendant Lopez to pull her shorts up,
> but defendant Lopez did not pull them up all the way.  Instead, defendant Lopez told
> Plaintiff to pull them up, which she knew Plaintiff could not because Plaintiff's
> hands were handcuffed behind her back.

Doc. No. 24 at 3:18-25.  The screening order concluded that the allegations in the SAC, including

the allegation that Defendants intentionally left Caruso's shorts down, was sufficient to state a

plausible Fourth Amendment violation.  See id. at 8:25-9:1.  The screening order concluded that

the SAC stated cognizable claims against Defendants "for excessive force in violation of the Eighth Amendment and an unreasonable search in violation of the Fourth Amendment." Id. at 9:13-15.  No other claims were found to be cognizable, and all other claims and defendants were dismissed. Id. at 9:16-17.

In the wake of *Williams v. King*, 875 F.3d 500 (9th Cir. 2017), the Magistrate Judge issued findings and recommendation ("F&R") to the undersigned that were meant to implement the previous screening orders. See Doc. No. 45 at 2:10-12.  The F&R's analysis of the unreasonable search claim was identical to the analysis in the original screening order. Cf. id. at 8:25-1010 with Doc. No. 24 at 7:22-9:11.  The F&R ultimately recommended that "all claims and all defendants, except for Plaintiff's claims against Ingram, Martinez, Lopez, and Solorio for excessive force in violation of the Eighth Amendment and for an unreasonable search in violation of the Fourth Amendment" be dismissed.  Doc. No. 45 at 10:16-19.

No objections to the F&R were filed, and the Court adopted the F&R.  See Doc. No. 53. Thus, "[a]ll claims and defendants, except for Plaintiff's claims against defendants Ingram, Martinez, Lopez, and Solorio for excessive force in violation of the Eight Amendment and for an unreasonable search in violation of the Fourth Amendment," were dismissed.  Id. at 2:1-4.

In deposition testimony, Caruso described the search at issue.[8]  Caruso testified that, while Lopez and Martinez were holding her up under her arms, Solorio started a pat down search and then pulling and looking down Caruso's underwear at Caruso's buttocks.  See Caruso Depo. 19:18-20:19.  As Solorio was looking down Caruso's underwear, Solorio stated, "I see it, I see it," and went to reach her hand down Caruso's underwear.  See id. at 20:19-21.  Solorio stopped reaching and put on gloves, while Ingram pulled a table over to Caruso.  See id. at 20:22-25. Ingram then instructed Lopez and Martinez to bend Caruso over the table.  See id. at 21:3-7. Caruso was pushed faced down on the table with her hands cuffed behind her back, and Ingram, Lopez, and Martinez holding Caruso down on the table.  See id.  Solorio eventually got her gloves on. See id. at 21:18-19.  Solorio pulled Caruso's underwear and shorts down all the way to the

---

[8] For clarity, the search at issue is the search that yielded the drug bindles.  As noted above, the Court granted summary judgment on the search that yielded the cell phone.

ground leaving Caruso's buttocks sticking up in the air and Caruso naked from the waist down. See id. at 21:19-23.  Caruso began crying for the Defendants to stop, that they did not have to do this, and that she would give them the bindle.  See id. at 21:23-24.[9]  Solorio "went in [Caruso's] butt twice," since "[s]he couldn't get [the bindle] the first time she went in because the glove got stuck going between the butt cheeks."  Id. at 21:24-25; see id. at 22:2-8.  While retrieving the drug bindle, Solorio "grazed" Caruso's anus, but did not penetrate the anus.  See id. at 62:4-10.  Caruso testified that she was willing to do a strip search and never refused to do a strip search, but she only wanted it done in the normal place for strip searches and in accordance with proper procedures.  See id. at 22:8-20.  After the drug bindle was retrieved, Ingram ordered the others to stand Caruso up.  See id. at 22:21-22.  Caruso was standing naked from the waist down and asked three times for someone to pull her shorts and underwear up before Ingram ordered Lopez to do so.  See id. at 22:22-23:3.  After Caruso's shorts were pulled up, Defendants placed Caruso in a wheelchair for transport to the ISU office.  See id. at 23:12-24:12.

In their summary judgment motion, Defendants argued that the search was reasonable, Solorio conducted a pat-down search, male staff were present because of Caruso's resistance and sitting on the floor, the drug bindles posed a threat to institutional safety, permitting a delay would have allowed Caruso to dispose of or secrete the contraband, and Caruso was afforded some privacy because the search occurred in her cell.  See Doc. No. 187 at 4:3-7:28.  Caruso argued that there were numerous disputed issues of material fact, including how much clothing was removed, whether Caruso's naked body was exposed, whether male staff participated in the search or could observe the search, whether the search was visible to others from the doorway of the cell, whether Caruso posed a threat to others, and whether Defendants could have conducted a search in another location.  See Doc. No. 200 at 14:14-15:25.  Caruso did not argue that she was subjected to a cavity search (the term "cavity" or "cavity search" is not used in Caruso's opposition), nor did she cite her deposition testimony that Solorio grazed her (Caruso's) anus.  See id.  Both sides argued

---

[9] This portion of Caruso's deposition was handwritten in by Caruso as part of the deposition review/correction process.

the four *Bell v. Wolfish* factors for reasonableness.[10]  Nevertheless, it was apparent from the arguments of the parties that the presence of male staff and whether clothing was removed were sharply contested issues.  Thus, the Court accepted Caruso's version of events and found that some form of strip search occurred, although the Court expressly did not classify the search at issue.  See Doc. No. 234 at 15:14-26.  Because the Court found that some form of strip search occurred with the direct participation of two male guards and in the absence of an emergency, *Byrd* applied, set the standard, and indicated that a Fourth Amendment violation occurred.  See id.

From the above, the Court concludes that there is one search at issue.  The search involved bending Caruso over a table while being held down by two male guards (Ingram and Martinez) and one female guard (Lopez), while another female guard (Solorio) pulled Caruso's underwear down to her ankles and then twice reached between Caruso's buttocks to retrieve a drug bindle.  Solorio reached between Caruso's buttocks twice because the first time her glove got stuck on Caruso's buttocks.  In the process of attempting to retrieve the drug bindle, Solorio grazed Caruso's anus, but did not penetrate it.  The search ended when Solorio retrieved the bindle, Caruso stood up, and her shorts were pulled back up.   It is unclear exactly how to classify this search.  It is more intrusive than strip searches described in some case, see Cookish v. Powell, 945 F.2d 441, 444 n.5 (1st Cir. 1991), but is comparable to the strip search described in *Byrd*.  See Byrd, 629 F.3d at 1137.

The Court does not find that there are multiple searches at issue, i.e. one strip search and one cavity search.  First, the screening order for the SAC and the F&R found that a claim for "an unreasonable search," not "unreasonable searches," was plausibly stated.  Neither the screening order nor the F&R discussed a cavity search as having occurred.  Instead, the screening order described a strip search and found particularly troubling the allegation that Caruso had to ask multiple times for her shorts to be pulled up after the drug bindle had been retrieved and she was left standing naked from the waist down.  Second, while the SAC does use the term "cavity

---

[10] The Court notes that Caruso relied on *Byrd* page 1146 for the assertion that "It is well established in the Ninth Circuit that cross-gender searches are especially problematic under the Fourth Amendment."  Doc. No. 200 at 14:15-16.

1   search," the allegations described Solorio as reaching into Caruso's "butt."  This allegation does

2   not necessarily mean that a cavity search occurred as the allegation can describe Solorio reaching

3   between Caruso's buttocks, which at least from a lay perspective, is not the same as penetrating or

4   "reaching" into the anal cavity.  In fact, Caruso's deposition testimony confirms that the drugs

5   were between her buttocks *near* her rectal area, that her anus was not penetrated, and, although her

6   anus was grazed, Solorio stopped searching Caruso when the bindle was actually retrieved during

7   the second attempt (the first having failed because Solorio's glove got stuck on Caruso's

8   buttocks).  Third, Caruso's opposition to summary judgment did not state that there was a cavity

9   search at issue, and neither the terms "cavity" or "cavity search" are used anywhere in the

10  opposition.  See Doc. No. 200.  Instead, the focus of the opposition was on some form of a strip

11  search and the *Bell* factors (although *Byrd* was cited and relied on), again without an argument that

12  a cavity search had occurred.  Finally, the relevant pages of Caruso's deposition, pages 19 to 23,

13  focus on a strip search occurring, not on a cavity search occurring.

14          Having determined that there is one search at issue, the question becomes how Caruso can

15  demonstrate a Fourth Amendment violation/whether Caruso can argue the reasonableness of the

16  search generally?

17          "The fourth amendment guarantees 'the right of the people to be secure . . . against

18  unreasonable searches and seizures.'  This right extends to incarcerated prisoners . . . ."

19  Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  Thus, "[s]earches of prisoners must

20  be reasonable to be constitutional."  Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010).  The

21  reasonableness of a particular search is determined by reference to the prison context through

22  application of the balancing test the Supreme Court announced in *Bell v. Wolfish*.  See Nunez, 591

23  F.3d at 1227; Michenfelder, 860 F.2d at 332.  In *Bell*, the Supreme Court explained:

24          The test of reasonableness under the Fourth Amendment is not capable of precise
            definition or mechanical application. In each case it requires a balancing of the
25          need for the particular search against the invasion of personal rights that the search
            entails. Courts must consider the scope of the particular intrusion, the manner in
26          which it is conducted, the justification for initiating it, and the place in which it is
            con-ducted.
27
28  Bell v. Wolfish, 441 U.S. 520, 558 (1979); see Nunez, 591 F.3d at 1227; Michenfelder, 860 F.2d

at 322.  However, "cross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free form unreasonable searches."  Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1146 (9th Cir. 2011).

Byrd dealt with a strip search of a male prisoner by a female guard.  See Byrd, 629 F.3d at 1137, 1142.  In the course of the strip search, the female guard slightly moved the prisoner's penis and scrotum through very thin underwear and ran her hand up to separate his buttocks to ensure no contraband was in Byrd's anus, again apparently through very thin underwear.  See id. at 1137.  There was no emergency situation occurring at the time of the search.  See id.  The Ninth Circuit evaluated the four Bell factors to determine whether a constitutional violation had occurred.  See id. at 1141-43.  While the last two Bell factors weighed in favor of a reasonableness finding, the first two factors were "so extreme that a conclusion of unreasonableness [was] compelled."  Id. at 1143.  The Ninth Circuit then evaluated some of its earlier cases and cases from other circuits.  See id. at 1143-46.  The Ninth Circuit initially noted that courts "throughout the country have universally frowned upon cross-gender strip searches in the absence of an emergency or exigent circumstances."  Id. at 1143.  After evaluating the cases, the Ninth Circuit explained:  "This litany of cases over the last thirty years has a recurring theme:  cross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches."  Id. at 1146.  The Court reads Byrd as recognizing the rule that cross-gender strip searches of prisoners in the absence of an emergency is unconstitutional.  See Napper v. Wong, 419 F. App'x 790, 790-91 (9th Cir. 2011) (parenthetically describing Byrd as holding "cross-gender strip search conducted in the absence of emergency circumstances is unconstitutional under the Fourth Amendment.").

Byrd does not, however, expressly explain how to deal with cross-gender strip searches when an emergency exists.  The Court cannot read Byrd to imply that the presence of an emergency means that any type of search may be done or that any conduct may occur in the course of the search.  Byrd did not indicate that the strip search was otherwise conducted in an unreasonable manner, and did not challenge the dissent's assertion that the search was conducted "professionally."  See Byrd, 629 F.3d at 1143.  The problem was the cross-gender nature of the

search.  See id.  To give effect to the rule that searches must be reasonable, as well as recognizing that an emergency may sanitize one type of search that would otherwise be unconstitutional, the Court concludes that the nature of the emergency becomes a relevant consideration in applying the four *Bell* factors to a cross-gender strip search conducted during an emergency.

In sum, the Fourth Amendment law with respect to searches of a prisoner's person has been set through cases like *Bell*, *Michenfelder*, and *Nunez* – the search must be reasonable in light of the *Bell* factors.  However, if the search is a cross-gender strip search (or presumably something more intrusive than a strip search), *Byrd* interjects itself into the general rule.  Under *Byrd*, if there is a cross-gender strip search that is conducted in the absence of an emergency, there is a constitutional violation *per se*, irrespective of how the *Bell* factors may be argued by the parties.  If there is an emergency, however, then the general rule reverts back, but the search must be reasonable in light of the *Bell* factors and the emergency encountered.

As applied to this case, Caruso's testimony, if believed, demonstrates that a strip search was conducted in the immediate presence, and with the direct participation and assistance of, two male guards in the absence of an emergency.  That is, her testimony triggers the *Byrd* rule and liability for some form of a cross-gender strip search.   However, Caruso is not limited to demonstrating that no emergency existed.  Caruso may argue that the strip search was unreasonable under the *Bell* factors and in consideration of the emergency confronted.  Therefore, it is not appropriate to prevent Caruso from presenting evidence that addresses reasonableness under the *Bell* factors.

*Ruling*

Defendants' supplemental motion to preclude Caruso from arguing the reasonableness of the search is denied, consistent with the above analysis.

2.   Supplemental Motion No. 2 – Exclude Evidence or Argument Concerning Body Cavity Searches

*Defendants' Arguments*

Defendants argue that the Court has ruled that the only remaining Fourth Amendment claim concerns an intrusive cross-gender strip search.  The Court's summary judgment ruling

1   noted the distinctions between different types of searches.  Since the only remaining claim

2   concerns the alleged visual inspection of Caruso while partially unclothed, an alleged body cavity

3   search is not relevant and should be excluded.  Moreover, Caruso testified in deposition that

4   Defendants did not penetrate a body cavity in connection with this search.  There is no evidence

5   that Defendants specifically inspected one of Caruso's body cavities, and Defendants deny that

6   Caruso's private areas were exposed during the search.  Caruso was face down on the table at the

7   time of the search and has no personal knowledge as to whether her body cavities were inspected

8   by Defendants.  Since there is no evidence that a cavity search occurred, any argument that a body

9   cavity search occurred would be unsupported and unduly prejudicial.

10   *Plaintiff's Opposition*

11   Caruso argues that she has evidence that a body cavity search occurred in the form of her

12   own testimony.  Caruso testified that Solorio went between her buttocks and grazed her anus while

13   retrieving drug bindles.  Caruso would have personal knowledge of whether her body cavities

14   were inspected.  The fact that there was no penetration of the anus does not mean that a cavity

15   search did not occur.  Further, medical records by Nurse Franco on the day of the incident indicate

16   that Caruso was "caught by ISU today w/heroin in anus."  Further, Caruso reportedly told Dr.

17   Celosse that she was subjected to forced cavity search.  This evidence is relevant to the Fourth

18   Amendment claim and should not be excluded.

19   *Discussion*

20   Caruso can testify about what happened during the search and how it was performed,

21   including where she was touched.  Caruso would have felt this search and clearly has firsthand

22   knowledge of it.  This evidence is not only relevant to a determination of whether some form of

23   strip search occurred (again, Defendants argue only a pat-down occurred), but also to a

24   determination of the reasonableness of the search as performed and to Caruso's damages.  There is

25   no reason to preclude Caruso's testimony about where she was touched during the search.

26   In terms of arguing that a "cavity search" occurred, Caruso's complaint does use the term

27   "cavity search," see SAC at p.4 Claim 2, and alleged that Solorio conducted a cavity search by

28   "reaching into my butt and removing a small plastic bag . . . ."  Id. at 10:4-5.  However, as

discussed above, Caruso's opposition to summary judgment focused more on a strip search and never used the terms cavity or cavity search, see Doc. No. 200, Caruso's deposition testimony described Solorio reaching between Caruso's buttocks, see Caruso Depo. 21:24-22:8, Caruso's deposition focused on a strip search, see id. at 22:9-20, and Caruso's testimony does not adequately describe an intentional cavity search.  Caruso admitted that her anus was not penetrated and she does not indicate any kind of probing or lingering by Solorio – rather Solorio "grazed" Caruso's anus while attempting to remove the drug bindle.  See id. at 62:4-10.  Solorio reached between Caruso's buttocks twice because the first time her glove got stuck against Caruso's buttocks, and Solorio stopped searching/touching Caruso after she retrieved the bindle during the second attempt.  See id. at 21:24-22:22.  There is no indication that Solorio reached between Caruso's buttocks to do anything but retrieve the drug bindle.  Moreover, Caruso testified that before her pants and underwear were pulled down, Solorio looked in Caruso's pants and said that she saw the bindle.  See Caruso Depo. at 20:18-21.  If Solorio saw the bindle, the bindle could not have been inside of Caruso's anus.  To the Court's knowledge, Caruso has never testified that the drug bindle was any place other than between her buttocks *near* (not in) her anus.  Combined with the description of "grazing," Caruso's testimony indicates that Solorio happened to graze/touch Caruso's anus incidentally while retrieving the bindle.  It does not suggest that Solorio actively or intentionally searched or attempted to search inside of Caruso's anal cavity.  Incidentally or unintentionally touching/grazing the anus is not the same as searching the anus or anal cavity, although it does clearly relate to the reasonableness of the search that was performed on Caruso. Before Caruso can argue that she was subjected to a "cavity search," she needs to present a definition of "cavity search," either controlling case law or regulation, that is consistent with her testimony.  Unless she can identify such a definition, using the term "cavity search" is too prejudicial and inflammatory under Fed. R. of Evid. 403.

*Ruling*

    This motion is denied in that Caruso can testify about what happened to her during the search, including Solorio grazing her anus, as this is relevant to reasonableness of the search, damages, and the nature of the search performed (which is disputed).  This motion is granted in

1    that Caruso is precluded from using the term "cavity search" unless she can demonstrate that her

2    testimony fits a relevant definition of a "cavity search" because her testimony indicates that the

3    grazing was merely incidental to retrieving the bindle from between her buttocks.

4

5    <center>**<u>ORDER</u>**</center>

6          Accordingly, IT IS HEREBY ORDERED that:

7    1.    Plaintiffs' supplemental motions in limine (Doc. Nos. 329, 330, 331, 332) are GRANTED

8          IN PART and DENIED IN PART as explained above; and

9    2.    Defendants' supplemental motions in limine (Doc. No. 327) is GRANTED IN PART and

10         DENIED IN PART as explained above.

11

12   IT IS SO ORDERED.

13   Dated:   January 6, 2022

14                       SENIOR  DISTRICT  JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28