UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARUSO,<br><br>        Plaintiff,<br><br>    v.<br><br>OFFICER G. SOLORIO, et al.,<br><br>        Defendants. | Case No. 1:15-cv-00780-AWI-EPG (PC)<br><br>ORDER DISCHARGING ORDER FOR DEREK LEE AND THE OFFICE OF THE ATTORNEY GENERAL TO SHOW CAUSE WHY THEY SHOULD NOT BE SANCTIONED FOR FILING AN INTENTIONALLY MISLEADING DECLARATION<br><br>ORDER DIRECTING CLERK TO SERVE A COPY OF THIS ORDER ON DEREK LEE AT: THIRD DISTRICT COURT OF APPEAL, 914 CAPITOL MALL, SACRAMENTO, CA 95814 |

On May 13, 2022, the Court ordered attorney Derrek Lee and the Office of the Attorney General ("defense counsel") to show cause why they should not be sanctioned pursuant to Federal Rule of Civil Procedure 11(b) and/or the Court's inherent authority for filing an intentionally misleading declaration with the Court.  (ECF No. 362).  The Court finds that the declaration was misleading.  However, as there is insufficient evidence for the Court to conclude that defense counsel filed the declaration to intentionally mislead the Court or otherwise acted in bad faith, the Court will discharge the order to show cause.[1]

---

[1] This case settled on September 26, 2022.  (ECF No. 393).  However, "[t]his settlement did not resolve the pending OSC re: sanctions…."  (Id.).

1

## I.   BACKGROUND

On February 23, 2018, Plaintiff, who at the time was proceeding *pro se* and incarcerated at California Institution for Women, filed a motion alleging that her cell was recently searched, and that subpoenas issued by this Court were no longer in her cell.  (ECF No. 60, p. 1).  She further alleged that "[n]umerous documents have been removed from [her] cell during the course of this civil suit."  (Id.).  In another motion filed that same day, Plaintiff alleged that when she was placed in Administrative Segregation, "[a]ll original copies of incident report and written afadatives [sic] from witnesses were missing from [her] property."  (ECF No. 57, p. 2).

Given the seriousness of the allegations in Plaintiff's two motions, the Court requested that the Warden of California Institution for Women "conduct an investigation and file a response to Plaintiff's allegations that documents relevant to this case have been taken from her."  (ECF No. 62, p. 2).

On March 21, 2018, the Warden filed her response in the form of a signed declaration.  (ECF No. 64).  According to the Court's docket, the Warden's declaration was filed by defense counsel Derrek Lee, who at the time worked for the Office of the Attorney General.[2]  (ECF No. 64).  The caption of the declaration indicates that it was filed by the Office of the Attorney General, and specifically Derrek Lee.  (Id. at 1).

In the declaration submitted by Derrek Lee, the Warden stated:

1. I am employed by the California Department of Corrections and Rehabilitation (CDCR) as the Warden for the California Institution for Women (CIW) in Corona, California.

2. I have reviewed the Court's Order (ECF No. 62), inquiring as to the merits of Caruso's (W-25086) claim that documents connected to her lawsuit have been removed from her possession.  Plaintiff specifically contends that documents were removed from per possession, on or about, January 31, 2018.  In line with the Court, both myself and staff at CIW take allegations of this nature very seriously.

3. At the direction of the Court, I have looked into Plaintiff's allegations, and have reviewed unit logs and cell-search logs dating back to January 1, 2018, to determine if Plaintiff's allegations have merit.  Whenever a cell-search is performed, staff are required to fill out these documents explaining the

---

[2] The Office of the Attorney General still represents Defendants, but as of November 15, 2021, Derrek Lee is no longer counsel for Defendants.  (ECF No. 309).

reason for the search and any items confiscated.  With respect to inmate
Caruso, there is no record of a cell search, nor is there a record of any
documents, legal or otherwise, that were confiscated from her cell.

(ECF No. 64, pgs. 1-2).

In a response to a motion for sanctions filed on March 14, 2022, Plaintiff claimed that additional facts have since been uncovered showing that a cell search did in fact occur in that time period, that at least one document was taken from her cell, and that attorney Derrek Lee and the Office of the Attorney General was aware of and involved in the cell search.  (ECF No. 347).  Plaintiff alleged that "in or around February 2018, Mr. Lee orchestrated a search of Ms. Caruso's cell to locate and confiscate a legal document that was accidentally produced to her. After conducting the cell search and confiscating the legal document from Ms. Caruso's cell, Mr. Lee then drafted a declaration for Warden Hill to sign.  The declaration signed by Warden Hill, submitted in response to a court order, represented to the court that there was no record of any search of Ms. Caruso's cell from January to March 2018."  (Id. at 11) (citations omitted).

In support of her allegation that a search occurred and that at least one document was taken, Plaintiff attached an excerpt from Plaintiff's deposition, taken on January 18, 2022, in which Plaintiff alleged that defense counsel in this case (Derrek Lee, at the relevant time):

asked officer -- asked Lieutenant Spinny, he was a lieutenant at the time, he was also ISU at the time, to go into my room and get back some discovery that they sent me by accident that they didn't want me to have, and when Spinny went in there to get the discovery, all of a sudden my motion for my -- not my motion, my -- my order to depose Officer Bates came up missing, so I didn't have that anymore.  The AG sent him in there and they tricked me by sending me up to the litigation coordinator.  They called me to the litigation coordinator's office.

They called me in there and said that the attorney general wants to talk to me on the phone, and I had just spoke to him that day, so it was not odd to me.  So I went in there thinking I was gonna talk to him, and I walked in the litigation coordinator's office and Lieutenant Spinny was sitting in the coroner [sic] like this and he said -- he got up, called the attorney general, stared [sic] talking to the attorney general saying okay, all right, handed the phone to the litigation coordinator and they told me, all right, we'll keep her here, and Spinny said you can either tell me where the document's at that I want or I can go tear up your whole Fing room and get -- and find it myself.  I said what are you looking for?

He said that it was part of the discovery they sent me having to do with the timecard on Officer Bates, and I knew exactly what it was because I didn't

> understand why it was in there to begin with, but I told him exactly where he could find it, and he said okay.  He told the officer, give me a five minute [sic] head start then let her out.  I mean, he told the litigation coordinator give me a five minute [sic] head start and then you can let her out.
>
> So I got out five minutes behind him from this being right here, because this is where the litigation officer's office is up here, so I can't just walk out.  I have to get escorted out, and Spinny was in my room tearing -- getting the documents that he was looking for.

Transcript of Deposition of Plaintiff, 174:3-175:18.

In support of her assertion that the Warden's declaration was drafted by Derrek Lee, Plaintiff submitted a copy of an email from Derrek Lee to Litigation Coordinator Bystrom, in which Derrek Lee stated, "Please find a draft of the declaration for Warden Hill attached." (ECF No. 347-8).

On April 29, 2022, Defendants filed a supplemental brief that addressed these allegations.  (ECF No. 357).  According to the supplemental brief, a search of Plaintiff's cell occurred and a document that Defendants produced in discovery was confiscated and destroyed.  (Id. at 5; ECF No. 357-2, p. 2).  However, Defendants alleged that the search occurred on November 29, 2017, not in or around February of 2018, and that the document was confiscated because it was a confidential personnel record that should not have been produced to Plaintiff.  (ECF No. 357, pgs. 4-5).  Additionally, Defendants alleged that it was Deputy Attorney General Mohmoud, not Derrek Lee, who initiated the search.  (Id. at 5) ("Out of an abundance of caution and in good faith, Defendants have conducted a further inquiry into this allegation and have identified that a cell search was conducted in or around November 29, 2017 at the direction of Ms. Mohmoud, another Deputy Attorney General unrelated to this case, after it was discovered that a single page of a confidential personnel document was accidentally produced to Caruso with Defendants' discovery responses.").

The Court allowed the parties to submit additional evidence regarding this issue.  On May 6, 2022, Plaintiff submitted a copy of an email from Derrek Lee to Bystrom, dated November 29, 2017, in which Derrek Lee asked Bystrom to set up a call with Plaintiff on that

\\\

day.  (ECF No. 358-1, p. 2).  Derrek Lee also asked for an ISU member to be present (or on the line).  (Id.).

On May 10, 2022, Defendants submitted an email from Deputy Attorney General Mohmoud to Lt. Spinney, dated November 29, 2017, in which Deputy Attorney General Mohmoud attached a copy of the personnel record she wanted confiscated and stated she would appreciate an update on whether Lt. Spinney was able to locate it.  (ECF No. 361, p. 4).  Derrek Lee was cced on the email.  (Id.).  Defendants also attached a redacted copy of the personnel document.  (Id. at 6).

## II.     THE ORDER TO SHOW CAUSE

Based on the above, the Court found as follows:

> The parties now appear to agree that a search of Plaintiff's cell occurred on November 29, 2017, and that a document was taken from Plaintiff's cell. Additionally, lawyers with the Office of the Attorney General, including Derrek Lee, were aware of and participated in the search.  Despite this, neither the Warden nor Derrek Lee informed the Court of the search when responding to the Court's order inquiring about documents that were allegedly taken from Plaintiff during the course of this suit.

(ECF No. 362, p. 5).

Accordingly, the Court ordered defense counsel to "show cause in writing why they should not be sanctioned pursuant to Federal Rule of Civil Procedure 11(b) and/or the Court's inherent authority for filing an intentionally misleading declaration with the Court."  (ECF No. 362, p. 8).

On June 3, 2022, defense counsel filed their response.  (ECF No. 365).  According to defense counsel,

> Defense counsel did not intend to make a misrepresentation to this Court when they submitted Warden Hill's declaration without mentioning the November 2017 search in response to the Court's Order.  (ECF No. 62, 64.)  The representation made that there was no record of a cell search or confiscated documents in January or February 2018 was not made in bad faith, for any improper purpose, or to mislead the Court, and was based on a reasonable good faith belief that this was the relevant time period when the Court and Plaintiff sought information.  Counsel's failure to previously mention the November 2017 cell search was not in bad faith or in any way intended to hide this fact from the Court, as this search was not related to any issues or documents in the

5

case, was not improper or otherwise "concealed" from Plaintiff, and involved an unrelated confidential personnel document belonging to another Deputy Attorney General.  Therefore, defense counsel believed the November 2017 search was outside the scope of the Court's order.

(Id. at 6-7).

On June 28, 2022, the Court held a hearing on the order to show cause.  (ECF No. 366).  Jenny Huang telephonically appeared on behalf of Plaintiff.  Defense counsel Lawrence Bragg, Cassandra Shryock, and Le-Mai Lyons personally appeared.  Former defense counsel Derrek Lee also personally appeared.

On July 19, 2022, the Court granted Plaintiff's request to submit evidence related to the order to show cause.  (ECF No. 375).  In particular, Plaintiff wanted to obtain and submit the logbook for the Miller B housing unit, which may show "who was involved in that search and the property that was confiscated."  (ECF No. 371-1, p. 2).

On August 1, 2022, Plaintiff filed her supplemental evidence.  (ECF No. 380).  According to Plaintiff's declaration, an entry was made in the Miller B logbook regarding the search.  (ECF No. 380-4, p. 3).  However, in response to her public record request for the logbook, Litigation Coordinator C. Alvarez stated that, "after reviewing its files, CDCR 'has determined these records could not be located therefore cannot be produced, therefore it has no public records that are responsive to your request'."  (ECF No. 380, pgs. 2-3) (citation omitted).  Plaintiff argues that the logbook should have been retained until November 2024 at the earliest, and that C. Alvarez "has a potential conflict of interest in responding to the public records request for the logbook, given her role as a witness in *Caruso v. Hill*."  (Id. at 2 & 3).  Plaintiff also states that she was "unable to obtain a copy of the search record that indisputably exists for the search conducted on November 29, 2017."  (Id. at 4).  Plaintiff suggests that the search she testified about during her deposition may not have been the November 29, 2017 search.  (Id. at 3-4).  She also suggests that Derrek Lee ordered a search, and that during that search, a timecard for CO Bates was confiscated.  (ECF No. 380, pgs. 3-4; ECF No. 380-4).

On August 9, 2022, defense counsel filed their response to Plaintiff's supplemental evidence.  (ECF No. 383).  Defense counsel reassert that the document that was confiscated

was a highly confidential personnel document related to another Deputy Attorney General.  (Id. at 2).  According to defense counsel, "Plaintiff's continual assertions that the 'case related' document that was confiscated was 'a time card on Correctional Officer Bates' is demonstrably incorrect as Defendants had not produced any documents identifying Officer Bates in either the initial disclosures or in response to requests for production."  (Id.).

### III.   LEGAL STANDARDS

Federal Rule of Civil Procedure 11(b) states:

REPRESENTATIONS TO THE COURT.  By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

"On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."  Fed. R. Civ. P. (c)(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. (c)(1).  However, *sua sponte* Rule 11 sanctions "will ordinarily be imposed only in situations that are *akin to a contempt of court*."  United Nat. Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1116 (9th Cir. 2001) (citations and internal quotation marks omitted).

The Court also has inherent authority to issue sanctions.  "[I]t is firmly established that [t]he power to punish for contempts is inherent in all courts.  This power reaches both conduct

before the court and that beyond the court's confines, for [t]he underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (alterations in original) (citations and internal quotation marks omitted). "Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that [the] conduct 'constituted or was tantamount to bad faith.'" Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980); see also Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1196 (9th Cir. 2003) ("Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct"). Furthermore, "inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44.

## IV.   DISCUSSION

After review of the evidence and arguments from all parties, the Court finds that the Warden's declaration submitted by defense counsel was misleading. While proceeding *pro se* in this case, Plaintiff alleged that numerous documents connected to her lawsuit were removed from her cell or from her property. (ECF Nos. 57 & 60). As the Court takes allegations of destruction of evidence and destruction of legal property seriously, the Court "request[ed] that the Warden of California Institution for Women conduct an investigation and file a response to Plaintiff's allegations that documents relevant to this case have been taken from her." (ECF No. 62, p. 2). After reviewing the Warden's declaration, the Court believed that no such cell search had been performed and Plaintiff's assertions were incorrect.

However, this was not the case. In fact, defense counsel now admits that a search was performed and that a document that was turned over as part of their initial disclosures was confiscated. Indeed, defense counsel was aware of the search at the time it happened. While that search did not fit the complete description from Plaintiff's filings, it did fit the scope of the Court's order and should have been disclosed.

Additionally, defense counsel's explanation as to why the Warden's declaration was

limited to searches that occurred from January 1, 2018, to March 13, 2018, is not satisfactory. According to Derrek Lee, both the Court and Plaintiff identified January 31, 2018, as the relevant date. (ECF No. 365-1, p. 2). The January 1 date was picked because "Plaintiff identified documents dating back to January 3, 2018…. Just in case Plaintiff was mistaken with respect to the exact date of the search, [Derrek Lee] believed that a search encompassing all of January 2018 (to a date near filing) would be responsible to Plaintiff's allegations and the Court's order." (Id.).

However, neither Plaintiff's motions nor the Court's order was limited to January of 2018. While Plaintiff mentioned a search in January in one motion, she also alleged that "[n]umerous documents have been removed from [her] cell during the course of this civil suit." (ECF No. 60, p. 1). In another motion, Plaintiff alleged that all original copies of the incident report she received after the incidents alleged in the complaint, as well as all witness statements, were removed from her property when she was placed into administrative segregation. (ECF No. 57, p. 2). In issuing its order asking for a response to these allegations, the Court did not limit its order to search(es) that were conducted in January of 2018. Instead, the Court noted that Plaintiff made these allegations and asked the Warden to "conduct an investigation and file a response to Plaintiff's allegations that documents relevant to this case have been taken from her." (ECF No. 62, pgs. 1 & 2).

Further, the January 1 cutoff appeared to have been selected (or at least influenced by) Derrek Lee,[3] who, at the time he submitted the Warden's declaration, knew that a search occurred approximately a month earlier and that a document that was turned over to Plaintiff as part of discovery in this case was taken from Plaintiff's cell. Despite all of this, defense counsel artificially limited the date range of the search to omit the earlier search.

Moreover, this was not the first time the Court was misled by defense counsel in this

---

[3] (See, e.g., ECF No. 347-8, pgs. 2-3 (in an email dated March 1, 2018, Derrek Lee asked Litigation Coordinator Jeff Bystrom to "track down whether Caruso has lost or had any legal property confiscated in the last sixty days[]"); ECF No. 365-1, p. 2 (in a declaration signed by Derrek Lee, Derrek Lee stated that he brainstormed with the Warden, and that he "thought a responsive timeframe would include any searches from January 1, 2018 to the date of filing")).

case. On April 16, 2018, the Court asked for a response from the Warden regarding Plaintiff's inability to make copies in a timely manner. (ECF No. 69). The Court later found that the Warden's response, which appears to have been filed by defense counsel, contained an inaccuracy that was "very troubling." (ECF No. 102, pgs. 5-6). Additionally, in a joint discovery statement, Defendants alleged that Plaintiff's counsel brought contraband into a facility and gave it to an inmate. After substantial briefing from the parties (ECF Nos. 115, 126, & 133), the Court struck the references to contraband from the record, finding that "the contraband allegation in the joint discovery statement was highly misleading." (ECF No. 147, pgs. 5 & 10). Finally, the Court sanctioned Defendants because they repeatedly informed the Court that an original incident report did not exist, even though it later came to light this too was false and an original incident report did in fact exist. (ECF No. 221) ("Defendants were ordered by the Court to provide all versions of the incident report by December 26, 2017. This order was reiterated multiple times. Defense counsel repeatedly assured the Court that all versions had been located and there was nothing more to produce. And yet, an earlier version did exist and was not produced to Plaintiff until February 28, 2019.").

The Court thus continues to have serious concerns about defense counsels' repeated involvement in misleading, and at sometimes false, statements throughout this litigation. It reminds counsel that attorneys are officers of the Court. See, e.g., Attorney Oath on Admission, Form AO 153, https://www.uscourts.gov/sites/default/files/ao153_0.pdf (last visited October 25, 2022 ("I [] DO SOLEMNLY SWEAR [] THAT AS AN ATTORNEY AND AS A COUNSELOR OF THIS COURT I WILL CONDUCT MYSELF UPRIGHTLY AND ACCORDING TO LAW…."); CA ST RPC Rule 3.3(a)(1) ("A lawyer shall not[] knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.") (asterisks omitted) (effective November 1, 2018).

The Court looks to counsel to speak only the truth to the Court. Without trust in counsel, the Court cannot perform its functions to facilitate the administration of justice. This duty of honesty is especially important when considering allegations of *pro se* parties, which

Ms. Caruso was before appointment of counsel.  The Court repeatedly looked to defense counsel to affirm or deny serious allegations made by Ms. Caruso.  By denying those allegations in a false and misleading manner, defense counsel wrongfully discredited Ms. Caruso and exploited her then-*pro se* status.

Nevertheless, the Court will discharge the order to show cause without recommending that defense counsel be sanctioned.  While the declaration was misleading, the Court has insufficient evidence before it to conclude that defense counsel intentionally misled the Court or otherwise acted in bad faith.  Moreover, this case has now settled (ECF No. 393), and has thus ended.  Therefore, the Court will discharge the order to show cause.

## V.    ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The order to show cause entered on May 13, 2022, is DISCHARGED; and

2. The Clerk of Court shall serve a copy of this order on Derrek Lee at: Third District Court of Appeal, 914 Capitol Mall, Sacramento, CA 95814.[4]

IT IS SO ORDERED.

Dated:   **October 25, 2022**

/s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE

---

[4] This is the address listed for Derrek Lee on the State Bar of California's website. https://apps.calbar.ca.gov/attorney/Licensee/Detail/297497 (last visited October 25, 2022).